[No. B108632. Second Dist., Div. Seven. Oct. 22, 1997.]

In re TAMNEISHA S., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Appellant, v.
KATHRYN S. et al., Defendants;
GLORIA M. et al., Respondents.

COUNSEL

De Witt W. Clinton, County Counsel, Frank J. Da Vanzo, Principal Deputy County Counsel, and Holly Bryan for Plaintiff and Appellant.

No appearance for Respondents.

**Opinion**

**JOHNSON, Acting P. J.**—The Los Angeles County Department of Children and Family Services (hereinafter DCFS) appeals an order granting legal guardianship of Tamneisha S., a dependent minor of the court, to her foster parents. DCFS asserts adoption is the permanent plan preferred by the California State Legislature when a child cannot be reunited with his or her parents and therefore is the preferred plan for Tamneisha. While it is true adoption is the preferred permanent plan for a child found dependent under section 300 of the Welfare and Institutions Code[1] who cannot be returned to his or her family, the Legislature has made explicit the manner and circumstances in which a juvenile court may terminate parental rights and order a child be placed for adoption. Under section 366.26, subdivision (c)(1), "[t]he court shall terminate parental rights only if it determines by clear and convincing evidence that it is likely that the minor will be adopted . . . ."[2] Absent such a finding, the court may make arrangements for the child's long-term care which may or may not include active parental involvement, but the parental relationship may not be terminated. (§ 366.26, subds. (b), (c).) In this case, the juvenile court found DCFS failed to show by clear and convincing evidence Tamneisha would likely be adopted. Therefore, we hold it was within the juvenile court's discretion to order legal guardianship as the permanent placement plan for Tamneisha.

## Facts and Proceedings Below

Tamneisha S. was born on May 12, 1993, suffering from cocaine withdrawal, jitteriness and a positive toxicology screen for cocaine. On May 18, 1993, DCFS filed a petition claiming the child came within the provisions of section 300.[3] On May 19, 1993, the juvenile court found a substantial danger existed to the physical and emotional health of Tamneisha S. and there was no reasonable means to protect the minor without removing her from the care of her mother.[4] Therefore, the juvenile court ordered DCFS to prepare a preajudication social study pursuant to section 281 and to place the child in shelter care until the next hearing.

---

[1]Unless otherwise noted, all statutory references will be to the Welfare and Institutions Code.

[2]Section 366.26, subdivision (c)(1) states: "The court shall terminate parental rights only if it determines by clear and convincing evidence that it is likely that the minor will be adopted based upon the assessment made pursuant to subdivision (i) of Section 366.21 or subdivision (b) of Section 366.22."

[3]Section 300 is designed to protect any minor who has been physically, sexually or emotionally abused, neglected or exploited.

[4]At this time, the child could not be placed with the father because the mother refused to disclose the father's identity.

At the next full hearing on July 1, 1993, the juvenile court found Tamneisha a minor described by section 300, subdivision (b)[5] and placed her in the protective custody of DCFS. The court ordered family reunification services be started for the mother which required her to complete a drug counseling program with drug testing. The court also set a 6-month hearing for December 30, 1993, a 12-month permanency planning hearing (PPH) for June 30, 1994, and an 18-month PPH date of November 16, 1994.[6] The mother was allowed to have monitored visitation rights provided she was not under the influence of drugs or alcohol.

On August 6, 1993, Greg C. notified DCFS he was the father of Tamneisha.[7] He had been incarcerated for assaulting the mother while she was pregnant and had just been released. He expressed an interest in the minor and a desire to possibly visit Tamneisha. In light of this new information, on August 26, 1993, the court ordered DCFS to release the minor to the father upon his request or file a petition requesting denial of custody to him within 48 hours. Regardless of either possible action, DCFS was to allow the father to visit Tamneisha as much as possible. DCFS filed and was granted the petition to keep custody of Tamneisha.

At the December 30, 1993, hearing, the children's social worker's report stated the mother had not enrolled in the drug counseling program nor had she visited Tamneisha. The report stated the father had called Tamneisha's foster mother biweekly to check on Tamneisha but had not visited her. The father stated he was not able to find a stable job and was not in a position to care for Tamneisha at that time. He also stated he was going to enroll in a parenting class to learn how to raise a child. Tamneisha, now seven months old, had experienced several medical complications including a "breath holding spell" in which she required hospitalization. She was also diagnosed with severe asthma and was prescribed a pulmoaide machine to administer medication to clear her breathing.

At subsequent hearings, the father who had an alcohol problem and a criminal record, was found to be unable to provide a safe environment for Tamneisha. He had completed 11 parenting education classes and attended some alcohol counseling classes. On August 28, 1994, the father was incarcerated for assault with a deadly weapon. The court then set the

[5]Section 300, subdivision (b) states that "[t]he minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor, . . ."

[6]These dates are for determination of the mother's status only.

[7]At this time, the mother confirmed that he was the father, even though she had stated he was not the father when they were quarreling, and he had requested a paternity test, which was never taken.

required 6-, 12- and 18-month hearings for the father's reunification and permanency plans.

At this time, Tamneisha still had severe asthma and was found to be mildly delayed in mental development and motor development. In addition, she periodically displayed abnormal behavior including rolling her eyes back into her head and banging her head.

At the December 16, 1994, hearing the court found the mother had not enrolled in a drug counseling program nor had she visited Tamneisha in the past six months. Therefore, the court ordered DCFS to terminate reunification efforts with the mother and keep Tamneisha in foster care while the father's reunification efforts were continuing.

The father's progress was reviewed and monitored until December 29, 1995, when the father's rights to reunification were also terminated. A section 366.26 hearing was scheduled for April 26, 1996.

This hearing was rescheduled for May 23, 1996, at DCFS's request. From January 1, 1996, until the May 23, 1996, hearing DCFS attempted to find potential adoptive families but failed to identify any. Throughout these proceedings, the foster parents, Gloria and Wayne M., expressed their desire to become legal guardians of Tamneisha. They had raised Tamneisha since she was four days old and had taken care of her throughout all her legal and medical proceedings. At first Gloria M. stated she supported a plan of adoption, but after five months of seeing DCFS search and not find a family willing or qualified to adopt Tamneisha, Gloria M. stated she loved Tamneisha, wanted what was best for her and reiterated both foster parents' desire to become legal guardians of Tamneisha. At the May 23, 1996, hearing, the court demanded DCFS as well as counsel for Tamneisha produce a report regarding adoptive homes for Tamneisha at the next hearing scheduled for September 17, 1996.

On July 24, 1996, a social worker reported no potential adoptive families had been identified although, "several families had expressed an interest in her," at an adoption festival on June 22, 1996. DCFS requested another 90 days to evaluate whether any of these families were appropriate for Tamneisha.

At a hearing on August 22, 1996, the juvenile court requested a report detailing why the exception under section 366.26, subdivision (c)(1)(D)[8] does not apply to Tamneisha and continued the matter until October 2, 1996.

In the October 2, 1996, report DCFS stated Tamneisha had been "matched" to a potential adoptive family and requested another 90-day continuance to either determine if this family was an appropriate match for Tamneisha or to follow up with the other families who previously indicated interest in Tamneisha. In the October 24, 1996, hearing the juvenile court stated, "showing an interest is a long hue and cry away from findings of clear and convincing evidence most likely that the child will be adopted if I sever parental rights today." The court found DCFS had failed to show Tamneisha was likely to be adopted by clear and convincing evidence and at the foster parents' request appointed the foster parents her legal guardians.

## DISCUSSION

DCFS asserts since adoption is the permanent plan preferred by the Legislature when a child cannot be reunited with his or her parents, the juvenile court erred by ordering legal guardianship for Tamneisha at the section 366.26 hearing. We hold it is within the juvenile court's power to declare legal guardianship as the permanent plan for a dependent minor at a section 366.26 hearing and the court did not err in doing so in this case.

A hearing under section 366.26 is intended to provide a permanent plan for children who cannot be returned to parental custody. Section 366.26 provides the exclusive procedures for the termination of parental rights in a

[8]Section 366.26, subdivision (c)(1)(D) is one of four exceptions the Legislature stated, that if present, could constitute a sufficient basis for not terminating parental rights. Subdivision (c)(1)(D) states: "[t]he minor is living with a relative or foster parent who is unable or unwilling to adopt the minor because of exceptional circumstances, which do not include an unwillingness to accept legal or financial responsibility for the minor, but who is willing and capable of providing the minor with a stable and permanent environment and the removal of the minor from the physical custody of his or her relative or foster parent would be detrimental to the emotional well-being of the minor." In 1997, the Legislature added one sentence to subdivision (c)(1)(D) which states: "This subparagraph does not apply to any minor, who is living with a nonrelative and who is either (i) under six years of age or (ii) a member of a sibling group where at least one minor is under six years of age and the siblings are, or should be, permanently placed together."

dependent child proceeding. (§ 366.26, subd. (a).) At the permanency hearing the court must select one of the statutorily prescribed options.[9] Adoption, if possible, is the preferred plan for such children. However, the court is to choose the disposition best for the child. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 303 [19 Cal.Rptr.2d 544, 851 P.2d 826].)

Section 366.26 not only provides the exclusive procedures for termination of parental rights over dependent children, it also limits the circumstances under which a termination of parental rights may be accomplished. Previously, under Civil Code former section 232, there was no requirement of a showing the child would be likely adopted. (*In re Laura F.* (1983) 33 Cal.3d 826, 838 [191 Cal.Rptr. 464, 662 P.2d 922].) Thus under prior law, a dependent child could face what has been termed, " 'the limbo of perpetual foster care' without any parental relationship, effective or not." (*In re Heather B.* (1992) 9 Cal.App.4th 535, 547 [11 Cal.Rptr.2d 891], quoting *In re Laura F.*, *supra*, 33 Cal.3d at p. 838.) However, under section 366.26 only after proof by clear and convincing evidence a dependent child is likely to be adopted can an order terminating parental rights be issued. Absent such a finding the court may make arrangements for the child's long-term care short of adoption. These arrangements may or may not include active parental involvement but they may not include termination of the parental relationship.

In selecting a permanent plan under section 366.26, the likelihood of adoption is the pivotal question. (See, e.g., *In re Teneka W.* (1995) 37 Cal.App.4th 721, 728 [43 Cal.Rptr.2d 666]; see also *In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 [32 Cal.Rptr.2d 535].) This is because adoption, where possible, is the permanent plan preferred by the Legislature. This principle has been well established in many cases. (See, e.g., *In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1164 [53 Cal.Rptr.2d 93]; *In re Autumn H.*, *supra*, at p. 573; *In re Brian R.* (1991) 2 Cal.App.4th 904, 915 [3 Cal.Rptr.2d 768].) Subdivision (c)(1) established two prerequisites before a court may terminate parental rights. First, it requires the court determine by clear and

[9]Section 366.26, subdivision (b) states four options that the juvenile court shall institute at a section 366.26 hearing. They are: "(1) Permanently terminate the rights of the parent or parents and order that the minor be placed for adoption; . . . (2) Without permanently terminating parental rights, identify adoption as the permanent placement goal and order that efforts be made to locate an appropriate adoptive family for the minor within a period not to exceed 90 days; (3) Without permanently terminating parental rights, appoint a legal guardian for the minor and issue letters of guardianship; (4) Order that the minor be placed in long-term foster care, subject to the regular review of the juvenile court."

convincing evidence it is likely the child will be adopted.[10] The second requirement, while not at issue in this case, is a finding of one of the following: a finding that reunification services shall not be offered; that the whereabouts of a parent have been unknown for six months or that the parent has failed to visit or contact the minor for six months; or that the parent has been convicted of a felony indicating parental unfitness; or that a minor cannot or should not be returned to his or her parent or guardian.[11] Even if the two above requirements are met, however, subdivision (c)(1) lists four circumstances which may lead the court to deny termination of parental rights.[12]

Under the current statutory scheme, the Legislature has attempted to narrow the circumstances which may result in the removal of a child from parental custody in order to avoid interference with parental custody except where it is actually necessary and to eliminate the subjective value judgments of social workers and individual judges as a factor. (§§ 202, subd. (a), 300, & 361, subd. (b).) The Legislature has emphasized the primary purpose and initial goal of dependency proceedings is to preserve and/or reunify the family. (§§ 202, subd. (a), 300.) Section 366.26 also represents a legislative determination the state has no interest in permanently terminating a parental relationship, regardless how inadequate or abusive the parent, except where

[10]See footnote 2, *ante*.

[11]The second sentence of section 366.26 subdivision (c)(1) states: "If the court so determines, the findings pursuant to subdivision (b) or paragraph (1) of subdivision (e) of Section 361.5 that reunification services shall not be offered, or the findings pursuant to subdivision (e) of Section 366.21 that the whereabouts of a parent have been unknown for six months or that the parent has failed to visit or contact the minor for six months or that the parent has been convicted of a felony indicating parental unfitness, or pursuant to Section 366.21 or 366.22 that a minor cannot or should not be returned to his or her parent or guardian, shall then constitute a sufficient basis for termination of parental rights. . . ."

[12]The circumstances which might make termination detrimental are section 366.26, subdivision (c)(1)(A)-(D): "(A) [t]he parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship; [¶] (B) [a] minor 12 years of age or older objects to the termination of parental rights; [¶] (C) [t]he minor is placed in a residential treatment facility, adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding the child a permanent family placement if the parents cannot resume custody when residential care is no longer needed[;] [or] [¶] (D) [t]he minor is living with a relative or foster parent who is unable or unwilling to adopt the minor because of exceptional circumstances, which do not include an unwillingness to accept legal or financial responsibility for the minor, but who is willing and capable of providing the minor with a stable and permanent environment and the removal of the minor from the physical custody of his or her relative or foster parent would be detrimental to the emotional well-being of the minor." In addition, in 1997, the Legislature added one sentence to subdivision (c)(1)(D) which states: "This subparagraph does not apply to any minor, who is living with a nonrelative and who is either (i) under six years of age or (ii) a member of a sibling group where at least one minor is under six years of age and the siblings are, or should be, permanently placed together."

to do so will enable the child to obtain a permanent and secure family relationship through adoption. (§ 366.26, subd. (c)(1).)

If the court does not find clear and convincing evidence that it is likely that the minor will be adopted,[13] then it must choose the best option among the remaining section 366.22 procedures: subdivision (c)(2), not terminate parental rights if at each and every hearing at which the court was required to consider reasonable efforts or services, the court has found that reasonable efforts were not made or that reasonable services were not offered or provided; subdivision (c)(3), identify adoption as the permanent placement goal; subdivision (c)(4), order the present caretakers as legal guardians or order the minor remain in long-term foster care; or subdivision (c)(5), order the minor transferred from the county welfare department or probation department to a licensed foster family agency.[14] In this case the juvenile court failed to find clear and convincing evidence Tamneisha was likely to be adopted.[15] Therefore, the juvenile court was correct in not selecting adoption as her permanent plan and in selecting another statutorily prescribed option.

The juvenile court was required to review DCFS's report and receive other evidence that the parties presented.[16] The court stated it read and considered the prior reports as well as heard oral argument from both sides. As this court previously stated, "'when a court has made a custody determination in a dependency proceeding, "'a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination.'"'" (*In re Michael D.* (1996) 51 Cal.App.4th 1074, 1087 [59 Cal.Rptr.2d 575], quoting *In re Stephanie* M. (1994) 7 Cal.4th 295, 318 [27 Cal.Rptr.2d 595, 867 P.2d 706].) Here, the juvenile court's decision appears well grounded. For a court choosing to select adoption as the

[13]See footnote 2, *ante.*

[14]Section 366.26 subdivision (c) states: "At the hearing the court shall proceed pursuant to one of the following procedures." It then lists the five procedures summarized above.

[15]The court said, "[Some families] showing an interest [in Tamneisha] is a long hue and cry away from findings of clear and convincing evidence most likely that the child will be adopted."

[16]Section 366.26, subdivision (b) states: "At the hearing, which shall be held in juvenile court for all minors who are dependents of the juvenile court, the court, in order to provide stable, permanent homes for these minors, shall review the report as specified in section 361.5, 366.21, or 366.22, shall indicate that the court has read and considered it, shall receive other evidence that the parties present, including, but not limited to, the parent's or guardian's failure to cooperate, except for good cause, in the provision of services specified in the child welfare services case plan, and then shall do one of the following: . . ." It then lists the options including adoption, legal guardianship, and foster care cited in footnote 9, *ante.*

permanent placement goal, which is what appellant requested in October of 1996, the statutorily allotted time for finding an adoptive family is 90 days past the section 366.26 hearing.[17] It is true that, an adoptive family need not be waiting in the wings but because of delays and continuances, DCFS had over 10 months to find an adoptive home for Tamneisha but failed to place her. No doubt, the trial court took the extended period of time available to DCFS to find an adoptive home into consideration when it made its finding.

As stated, section 366.26, subdivision (c)(3) allows the court to identify adoption as the permanent placement goal and order efforts be made to locate an appropriate adoptive family even though there are no prospective adoptive homes available, provided the court finds termination of the parental rights would not be detrimental to the minor and the minor has a probability of adoption.[18] However, this is premised on the condition there is a probability the child will be adopted. Here the lower court found that not to be the case.

Section 366.26, subdivision (c)(4) allows the court to appoint the minor's present caretaker(s) as legal guardian of the minor if the court finds adoption of the minor or termination of the parental rights not in the interest of the minor, or that one of the conditions in subparagraphs (A), (B), (C), and (D) of paragraph (1)[19] or in paragraph (2)[20] applies. While it is debatable if this option is available to a court if the court concludes the child is adoptable, this option is available when the court has failed to find the child would likely be adopted.

It should be noted the juvenile court requested but did not receive a comprehensive report on the exception to terminating parental rights stated in section 366.26 subdivision (c)(1)(D)[21] from appellant and appellant now contends the juvenile court misinterpreted this section. However, this exception would only be relevant if the court found the child came within the

[17]Section 366.26, subdivision (c)(3) states: "If the court finds that termination of parental rights would not be detrimental to the minor pursuant to paragraph (1) and that the minor has a probability for adoption but is difficult to place for adoption and there are no prospective adoptive homes available to the minor, the court may identify adoption as the permanent placement goal and without terminating parental rights, order that efforts be made to locate an appropriate adoptive family for the minor not to exceed 90 days. . . ."

[18]See footnote 17, *ante*.

[19]See footnote 12, *ante*.

[20]Section 366.26, subdivision (c)(2) states: "The court shall not terminate parental rights if at each and every hearing at which the court was required to consider reasonable efforts or services, the court has found that reasonable efforts were not made or that reasonable services were not offered or provided." This was not the case here.

[21]For the text of section 366.26, subdivision (c)(1)(D) see footnote 8, *ante*.

preceding paragraph (subd. (c)(1)) in the first place. Since the court found the child was not likely to be adopted, this section is not applicable.

DISPOSITION

The order of guardianship is affirmed.

Woods, J., and Neal, J., concurred.