2 Cal.App.4th 904 (1991)
3 Cal. Rptr.2d 768
In re BRIAN R., a Person Coming Under the Juvenile Court Law.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent,
v.
EDGAR R., Defendant and Appellant.
EDGAR R., Petitioner,
v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
BRIAN R. et al., Real Parties in Interest.
Docket Nos. H007758, H007742.
Court of Appeals of California, Sixth District.
December 23, 1991.
*910 COUNSEL
Cynthia Podren, under appointment by the Court of Appeal, for Defendant and Appellant.
Steven M. Woodside, County Counsel, and Jeffrey L. Bryson, Deputy County Counsel, for Plaintiff and Respondent and for Real Parties in Interest.
Lynne R. Snyder for Petitioner.
No appearance for Respondent Superior Court.
George Kennedy, District Attorney, and Elysa J. Wallace, Deputy District Attorney, for Real Parties Interest.
OPINION
ELIA, J.
Edgar R. (appellant) appeals a permanency planning hearing order which continued his son, Brian R., in out-of-home custody and authorized county counsel to file a petition to terminate his parental rights. Recognizing that parts of this order are appealable and parts reviewable only by writ (see Welf. & Inst. Code, § 366.25, subd. (j); In re Elizabeth M. (1991) 232 Cal. App.3d 553, 562-563 [283 Cal. Rptr. 483]; In re Violet J. (1990) 225 Cal. App.3d 600, 606 [275 Cal. Rptr. 139; In re Kristin W. (1990) 222 Cal. App.3d 234, 245 [271 Cal. Rptr. 629]), appellate counsel has also filed a petition for a writ of mandate and/or prohibition, and a request that we stay further proceedings. We ordered that the petition be considered with the appeal.
In his writ petition, appellant claims that insufficient evidence supports the referral for termination proceedings and that respondent Santa Clara County Department of Family and Children's Services failed to meet its burden of proof; that speculation on appellant's future conduct is an insufficient basis for denying him custody of his son; that since appellant's life has stabilized and present circumstances may be considered in a Civil Code section 232 proceeding, Brian's uncertainty will be needlessly prolonged if termination proceedings are instituted; that Brian's adoptability was not *911 established by complete and competent evidence; that appellant has complied with reunification; and that his due process rights were impugned both by the court's failure to appoint competent mental health evaluators and defense experts, and by its failure to appoint counsel for him. Since appellant has failed to make a prima facie showing, we will deny the writ petition and the request for a stay of further proceedings.
In his appeal, appellant argues in addition that the juvenile court erred in discontinuing reunification and curtailing visitation, and that further reunification time was necessary in light both of the delay in review hearings and the fact that appellant was not appointed counsel until a year after disposition. We find no error and will affirm the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND
Brian R. was born on January 3, 1987. When his mother was arrested on October 15, 1988, Brian went to live with his maternal grandmother. He was placed in protective custody by his grandmother on October 17, 1988. According to the Welfare and Institutions Code section 300, subdivision (a) petition[1] filed on October 9, 1988, the grandmother was unwilling to provide care for Brian without the supervision of the juvenile court, since there had been a history of extreme conflict between Brian's parents.
Brian was returned to his grandmother's home after a detention hearing on October 20, 1988. According to the social worker's report submitted for the jurisdiction hearing, dated November 7, 1988, Brian's mother, who is not a party to this appeal, was arrested on October 15, 1988, after a warrant check following a routine traffic stop showed an outstanding warrant for violating her probation.
A combined jurisdiction and disposition hearing was held on November 7, 1988. Both parents admitted the petition's allegations, which the court found true as amended. It then sustained the petition, and ordered that Brian remain in the home of his maternal grandparents.
A family reunification service plan, filed on December 19, was signed by both parents. It required individual and family counseling, attendance at a substance abuse program, weekly chemical testing, stable housing, parent education classes, resolution of adult court obligations, and abstention from drugs and alcohol. Visits with Brian were made contingent on negative drug tests.
*912 Due to "family problems" relating to the needs of Brian's great-grandfather, the juvenile court approved Brian's move to the foster home where he still resided on February 10, 1989. His foster mother wished to adopt him.
On April 3, 1989, the case worker informed the court that according to Brian's maternal grandmother, both parents had left the state and their whereabouts were unknown. Neither had responded to requests to contact the social worker and neither had fulfilled adult court obligations.
A revised reunification plan, filed on May 1, 1989, was designed to cover the period May 1 to November 1, 1989. Neither parent signed this plan.
The social worker's report for the six-month review hearing, filed on May 1, 1989, indicated that Brian had been removed to foster care due to family problems in the grandparents' home. He was adjusting to his new placement, and dental work had markedly improved his speech and eating. Neither parent had substantially complied with the service plan. Nonetheless, further reunification was recommended. Further reunification was ordered at the six-month review hearing on May 1, 1989, and Brian was continued in his foster placement.
A 12-month review hearing was originally calendared for October 19, 1989, but was continued to November 13, 1989. On November 3, 1989, appellant was appointed counsel. On November 13, the case was continued to November 27, when it was set for a contested 12-month review commencing on January 5, 1990. Hearings commenced on January 5, 1990, and ended more than eight months later, on August 14, 1990. An oral decision was rendered at a hearing on September 5, 1990, that the case be referred for the initiation of termination proceedings. This appeal and writ petition ensued.

DISCUSSION

I. WRIT PETITION

A. Sufficiency of the Evidence

(1) Appellant first contends that insufficient evidence justified the juvenile court's authorization of Civil Code section 232 proceedings to terminate his and Brian's mother's parental rights, and that the juvenile court abused its discretion in finding that respondent had met its burden of proof. We disagree.
As appellant notes, in order to maintain custody over a dependent child at a status review hearing, section 366.2, subdivision (e) requires respondent to *913 demonstrate by a preponderance of the evidence that returning the child to his or her parents would "create a substantial risk of detriment to the physical or emotional well-being of the minor." A parent's failure to participate regularly in court-ordered treatment programs constitutes prima facie evidence that return would be detrimental. (Ibid.) Appellant appears to allege that respondent failed to meet its burden of proof in establishing a risk of detriment to Brian if he were returned to appellant's custody. He also contends that the juvenile court failed to comply with section 366.25, subdivision (c), in failing to make a determination, prior to developing a permanent plan for Brian, that there was no substantial likelihood that Brian would be returned to his parents within six months.
The chronology of this extraordinarily lengthy case defeats both these arguments. While the contested hearing which commenced in January 1990 was originally scheduled as a 12-month review, the case was heard over an 8-month period, and by the time it ended, the case was 22 months from disposition. Appellant made substantial strides in resolving the problems which led to the initial dependency after his return to the Bay Area in November 1989: He had tested "clean" and his drug problem was in remission; he had completed a parenting class; he was receiving domestic abuse counseling; he had had consistent and positive visits with Brian; and he had stable employment and housing. Appellant's counsel argued long and hard to the juvenile court that this turnaround was sufficient grounds for Brian to be returned to his father's custody.
Expert witness Dr. Michael Jones testified, however, that despite this reversal, appellant did not have the capacity to parent Brian at that time. In his opinion, based both on testing and on clinical evaluations, appellant had a nonspecific, long-standing personality disorder with marked antisocial, dependent, and passive-aggressive features; he rationalized his abuse of his domestic partners; and he had a problem with taking responsibility. Were Brian to be returned to appellant's custody, he would be at risk of being abandoned, following a pattern in appellant's behavior. Dr. Jones testified that if he were returned to appellant's custody, Brian would be at risk from appellant's unstable lifestyle, which would likely include changes in residences and caretakers, and that appellant would be a model of unstable, unhealthy relationships and possible domestic abuse. In addition, Brian would be at risk of developing appellant's personality disorder.
On appellant's capacity to parent, Dr. Jones's opinion was that appellant had personality problems and that although he could function adequately for periods of time, eventually these problems hampered his ability to function as a parent. In Dr. Jones's opinion, it would not be in Brian's best interests to *914 continue efforts towards reunification, and adoption by Brian's foster parents was the most appropriate permanent plan.
In its oral decision at the close of the hearing, the juvenile court determined that Brian would be at risk if returned to his father's custody, and that there would be a substantial risk of detriment if Brian were returned to either parent. It determined that respondent had met its burden of proof in establishing detriment. In addition, it cited the fact that neither parent had made any progress toward reunification during the first six months of Brian's dependency, and that the same had been true for the second six months, during which period both parents had left the area. It noted that appellant's completion of the reunification requirements took place after the 18 months allowed by section 361.5 had expired. The court also noted that Dr. Jones had not been impeached by appellant's expert witness, and that he had had an opportunity to use his clinical skills in addition to tests to evaluate appellant. It noted that Dr. Jones had opined that appellant would not be ready to parent Brian for a year, and that Brian would be at risk of being abandoned and of developing appellant's personality disorder were he to be returned to appellant. We have no difficulty concluding, on this record, that sufficient evidence supports the juvenile court's finding that there was a substantial risk of detriment to Brian if he were to be returned to his father. (In re Cheryl H. (1984) 153 Cal. App.3d 1098, 1132 [200 Cal. Rptr. 789].)
(2) The juvenile court was not obligated, as appellant suggests, to make a determination that there was no substantial possibility that Brian would be returned to his father within six months. This finding would have been necessary had this been a 12-month hearing, and had the juvenile court determined that reunification services should be extended for an additional 6-month period. (§ 366.21, subd. (g)(1).) In this case, reunification commenced almost 13 months before the start of this contested hearing, and was ongoing during the 8-month period over which it took place. At an 18-month hearing, if a child is not returned to his or her parents, the juvenile court must develop a permanent plan for that child. (§ 366.22, subd. (a).) In this case, an 18-month review would have been scheduled no later than May 1990. Appellant was actively involved in reunification efforts until the end of the hearings on August 24, 1990, much longer than the 18 months allowed by statute.

B. Speculation as to Father's Future Conduct

(3) Appellant's second assignment of error is that the juvenile court impermissibly speculated on his future conduct, and that such speculation was an impermissible basis for denying him custody of Brian. We disagree.
*915 Appellant's reliance on In re Steve W. (1990) 217 Cal. App.3d 10 [265 Cal. Rptr. 650] is misplaced. In that case, an infant was removed from the physical custody of his mother after the father killed Steve's five-year-old stepbrother. The appellate court reversed that part of the dispositional order removing Steve from his mother's custody, agreeing with the mother that this removal was based only on speculation that the mother would enter another abusive relationship, and not on substantial evidence. (Id. at p. 22.) It concluded that the clear and convincing standard for removal had not been met in that case and that there was no evidence that less drastic alternatives could not protect Steve. (Id. at p. 23.)
Unlike Steve, Brian was not removed from his custodial parent at a dispositional hearing; he had not lived with his father for two or more of his three-and-a-half-year life. Neither is appellant an "innocent" parent, like Steve W.'s mother, who did nothing to justify the imposition of dependent status on her son; appellant was incarcerated at the time Brian was taken into protective custody, and he made no reunification efforts until 12 months into the reunification period. And we do not have, as in Steve W., mere speculation as to any new relationship the parent might enter which would endanger the child. We have expert opinion testimony, based on psychological testing and clinical evaluation, that Brian would be at risk if presently returned to appellant's custody.
As the juvenile court stated when making its decision, to protect Brian's best interests "requires that I use a little bit of a crystal ball because I can't predict what's going to happen in his life. I can't predict what's going to happen in Mr. R[.]'s life.... [¶] So, I have to look at the history of the case, and I have to look at the present circumstances."
We disagree that the juvenile court's decision to retain Brian in foster care was based on speculation; there was substantial evidence supporting the juvenile court's determination that appellant was not then capable of adequately parenting Brian, that appellant needed more time to become an adequate parent, and that returning Brian to appellant's custody at that juncture would be detrimental to him.

C. Authorization of Termination Proceedings

(4a) Appellant next argues that the order authorizing the filing of a petition to terminate his parental rights cannot be sustained because present circumstances may properly be considered in determining the propriety of severing parental rights and because, since appellant's life had stabilized, Brian's uncertainty would be needlessly prolonged.
*916 We find it ironic, first, that appellant employs the very argument he urges us to reject above  that speculation should not form the basis of juvenile court decisions  to argue, implicitly, that the court hearing a termination petition in this case would deny it because appellant's life had improved so substantially! It is, indeed, mere speculation to suggest that the overriding stability of appellant's life at some unspecified future time would necessarily form the basis for the rejection of a Civil Code section 232 petition.
The juvenile court, as we have discussed, infra, properly determined that returning Brian to appellant's custody, even after 21 months of reunification time, would be detrimental. Having made this determination, it had no choice but to proceed to make a permanent plan for Brian. (5) The statutorily preferred plan for a child who cannot be returned to his or her parents is adoption. (§ 366.25, subd. (d)(1).) Having found Brian adoptable (see infra), absent certain inapplicable exceptions, the juvenile court must authorize the commencement of termination of parental rights proceedings. The purpose of this statutory scheme is to end temporary placements for a dependent child, like Brian, who cannot be returned home, and to allow him or her to become a permanent part of a new family as soon as possible. (See, e.g., In re Micah S. (1988) 198 Cal. App.3d 557, 566 [243 Cal. Rptr. 756] [Brauer, J., conc.].)
(4b) As of this writing, hearings on a termination petition may presently be underway. If so, appellant may wish to address his argument that present circumstances make the petition's denial in Brian's best interests to the court hearing it. We will not, however, address that argument in this writ and appeal from a permanency planning hearing order.

D. Adoptability

Section 366.25, subdivision (d)(1) states "If the court finds it is likely that the minor can or will be adopted, the court shall authorize the appropriate county or state agency to proceed to free the minor from the custody and control of his or her parents...."
(6) Appellant argues that in this case adoptability "is also unclear." This argument is little short of specious; there was a plethora of testimony which established, beyond any shadow of a doubt, that Brian was adoptable. As the juvenile court noted in its decision, the social worker and Dr. Jones both testified that Brian was adoptable, and that the foster mothers wished to adopt him.
Appellant complains that the juvenile court's decision to limit the admissibility of an evaluation of Brian performed by Sarah Kaiser was critical on *917 this issue. This is ironic, at best, considering that appellant's counsel joined in the opinion of other counsel and the court that this evaluation was poor and ill-advised, and that a full evaluation of Brian was warranted. This is how Dr. Jones was appointed. Both Dr. Jones and Dr. Johnston, whom appellant's counsel consulted for an opinion on the Kaiser evaluation, concurred that although Brian was stressed and anxious, he displayed no severe emotional disturbance, and was functioning extraordinarily well given the lengthy instability in his life.
Appellant's suggestion that the suitability of Brian's foster placement with lesbian foster parents should have been considered is equally unpersuasive. The issue at the permanency planning hearing was whether Brian should be returned to his father's custody, not the propriety of Brian's present placement. Although appellant is correct that the best interests of Brian would be addressed in a Civil Code section 232 hearing, we reject any implication that the suitability of Brian's foster placement would be subject to question because his foster parents are lesbians. Appellant also suggests that "Father was to be judged by `socially agreed upon conventions' but the foster mothers evidently were not." The juvenile court was indeed evaluating appellant's stability in this hearing; the foster mothers, however, were not on trial.

E. Compliance with Reunification

In order to evaluate this argument, we must briefly review the chronology of Brian's dependency. Jurisdiction and disposition were established in November 1988. A six-month review hearing was held on May 1, 1989. The 12-month review hearing, originally scheduled for October 1989, was held between January and August 1990. By virtue of the delay involved in both scheduling and hearing this contested matter, this hearing also became the 18-month permanency planning hearing.
Appellant does not dispute that during the first six months of reunification he made no progress toward fulfilling its requirements. During the second six months, or between May and October 1989, he also undertook no efforts towards reunification. The record evidence established that appellant and Brian's mother left the Bay Area for Nevada in approximately March 1989 for six months. The next contact appellant had with the social worker was an office visit on November 6, 1989. In October 1989, based on almost 12 months of complete noncompliance with reunification efforts, the social worker recommended that reunification efforts be terminated and a permanent plan of adoption be implemented for Brian.
It is true that between the time appellant returned from Nevada in November 1989 and the conclusion of the contested hearing in August 1990, he *918 made great strides toward correcting the problems that led to Brian's dependency. As we have already noted, he tested negative on drug tests after November 1989, received domestic abuse counseling, completed a parent education class in June 1990, took care of outstanding criminal obligations, was steadily employed, and had a stable and suitable residence.
But as we stated previously the 12-month review became, by virtue of the passage of time, an 18-month permanency planning hearing. (See In re Albert B. (1989) 215 Cal. App.3d 361, 374, fn. 2 [263 Cal. Rptr. 694].) The issue at that hearing was not the likelihood of returning Brian to his father's custody within six months, but whether returning Brian to his father's custody at that juncture would be detrimental. The statutorily allowable reunification period had run out by the time the hearing was completed, and the court had to institute an alternative permanent plan for Brian.
The court stated in its decision that it could not ignore Brian's parents' noncompliance during the first 12 months of reunification efforts. It also noted that, by that time, the parents had had more than 18 months to comply, and that appellant had not completed the requirements of the service plan until after 18 months had expired.
(7) Appellant implies that because he has now completed reunification, Brian must be returned to him. We think the issue is not so simple. The juvenile court had the duty to evaluate appellant's nine months of efforts against his previous failings, and, more importantly, to evaluate the likelihood that he would be able to maintain a stable, sober and noncriminal lifestyle for the remainder of Brian's childhood. Appellant's belated compliance with reunification efforts is not definitive on this issue.

F. Expert Testimony and Appointment of Experts

(8a) Appellant attempted to impeach the testimony of the court-appointed evaluator, Dr. Jones, with expert testimony by Dr. Alan Garton, who was qualified, inter alia, as an expert in the administration and interpretation of psychological tests. His argument is that Dr. Garton's expertise, and his testimony that the psychological testing of appellant by Dr. Jones was flawed, impeached Dr. Jones's testimony, and his evaluation of appellant as having a personality disorder and being incapable of parenting.
Appellant misunderstands the standard of review on this issue. (9) Our function is not to reweigh the evidence and the conflicting expert testimony. (8b) The juvenile court found in its oral decision that "Dr. Jones was not impeached. Dr. Jones and Dr. Garton are both professionals *919 who have used their professional judgment. The difference between how the test was used is an individual choice. [¶] What I will not discount, though, is that Dr. Jones had the opportunity to apply his clinical skills as well as the testing skills. Dr. Garton didn't have that. Dr. Garton merely commented on a technical aspect. [¶] And you have to look at the fact that Dr. Jones spent time with the parents. He spent time with Brian. He spent time with the foster parents. [¶] And in Dr. Jones'[s] opinion, it would cause Brian anxiety to remove him; and in his opinion, at best, it would take at least another year before Mr. R[.] would be ready to care for Brian." These factual findings are supported by substantial evidence.
Appellant's second complaint is that both respondent and the juvenile court refused to authorize the appointment of Dr. Anthony Atwell, a psychiatrist, to evaluate Brian, despite the fact that all parties and the juvenile court commissioner hearing the case had concurred in deciding that he would be the most appropriate evaluator. Appellant claims this refusal foreclosed his ability to provide effective expert testimony. The record belies this contention. Appellant was able to present testimony by Dr.Garton in an attempt to impeach Dr. Jones's findings. Presumably, appellant could have had Dr. Atwell, rather than Dr. Garton, comment on Dr. Jones's evaluation. In any event, we are satisfied that appellant's ability to present expert opinion testimony in support of his position was not jeopardized by the juvenile court's failure to appoint Dr. Atwell.

G. Appointment of Counsel

Appellant argues both in his writ petition and in his appeal that he has a constitutional due process right to appointed counsel and that he was denied this right by the juvenile court's failure to appoint him counsel during the first 12 months of reunification. He also argues this court should apply Faretta v. California (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582, 95 S.Ct. 2525] to determine that his waiver of counsel at the jurisdiction and disposition hearing in November 1988 was ineffective, and that his lack of counsel for the ensuing 12 months was inherently prejudicial. We conclude that even assuming, arguendo, the waiver standard enunciated in Faretta for defendants in criminal proceedings applies, on the record before us appellant effectively waived his right to counsel. Having reached this conclusion, we need not decide whether a parent such as appellant has a constitutional due process right to counsel in a dependency proceeding.
A parent's statutory right to counsel, as it existed at the time of the jurisdiction and disposition hearing in November 1988, was enunciated in former section 317: "When it appears to the court that the minor or his *920 parent or guardian desires counsel but is unable to afford and cannot for that reason employ counsel, the court may appoint counsel...." California Rules of Court, former rule 1363(b) expands on this as follows: "The court shall next ascertain whether the ... parent, [or] guardian ... [is] represented by counsel; if not, the court shall advise the ... parent, or guardian of [his or her] right to have counsel present and, where applicable, of [his or her] right to appointed counsel.... [¶] (c) If the ... parent ... appears at the jurisdiction hearing without counsel, the court may appoint counsel if it appears that the ... parent ... desires counsel but is unable to afford counsel. Counsel shall be appointed for any parent or guardian unable to afford counsel whenever it appears that person is unable to adequately present the case and faces a substantial possibility of loss of custody or of prolonged separation from the minor."
At the commencement of the jurisdiction hearing, on November 7, 1988, the juvenile court stated "Before we get started, both parents have the right to have a lawyer represent their parental interest in these proceedings, and I will appoint a lawyer for either of you if you do want to be represented. [¶] Do you understand that?" Appellant replied that he did. The court then inquired whether the parents had read the petition, and called a recess for them to do so, and to decide whether to admit its allegations. Following the recess, the court cautioned "These cases involve significant rights, and once we go into a plan, it isn't that easy, necessarily, just to switch gears in a couple of months. Maybe you should talk to a lawyer."
The assistant district attorney representing Brian then told the parents "The plan right now is that Brian would stay with the grandmother.... [¶] ... If either of you [is] not in a position to take him back  if you spend the next year in jail and you are not in a position to take him, then we need to look for a permanent plan, and that can be either permanently plac[ing Brian] with the grandparents or some other relative, or put him up for adoption and terminate your parental rights. [¶] The case is reviewed in another six months to see where you are [at] that time.... [¶] Mr. R[.]: What you are saying is in six months and if everything is to what everybody needs, I could have Brian back? [Assistant District Attorney]: Right, but you need to understand that once the court becomes involved, that it is no longer  you can't just come in and say, `Well, I am ready[,]' and take him back. There needs to be a court order, and you need to show that you can take care of him."
Following an off-the-record discussion, the court told the parents: "I am going to go over with you the rights that you have and you have to give up before I can accept your admission to the petition." The juvenile court again *921 notified the parents of their right to be represented, and offered to appoint an attorney for one or both if they wished. It also notified them of their right to trial, of their right to "see, hear, and cross examine witnesses," of their right to use the court's subpoena power to subpoena witnesses on their behalf, and of their right to remain silent, which they would give up if they admitted the petition. Both parents indicated they understood these rights and then waived them.
The court also cautioned the parents that if it found the petition true, it "could place the child with either of you under certain restrictions or order that the child be placed in a relative or foster home.... [¶] If the decision is made to remove Brian from your custody, the court will establish a plan for you to work on to reunify you with your son. If you are unable to meet those requirements, then the court is required, under the law, to develop a permanent plan for the rest of Brian's minority until he is 18. That plan could include permanent placement orders in a relative or a foster home[.] The court could appoint legal guardians or order that a plan of adoption be pursued and your parental rights be terminated as part of that."
The court then asked the parents if they were under the influence of drugs or alcohol, and if anyone had made threats or promises to get them to admit the petition. Both parents then stated they understood the allegations of the petition, as amended, and that those allegations were true.
(10) Under Faretta v. California, supra, 422 U.S. at page 835 [45 L.Ed.2d at pages 581-582], a criminal defendant's waiver of his or her Sixth Amendment right to counsel should not be accepted unless he or she is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.' [Citation.]" "The test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." (People v. Bloom (1989) 48 Cal.3d 1194, 1225 [259 Cal. Rptr. 669 [774 P.2d 698], cert. den., 494 U.S. 1039 (1990) [108 L.Ed.2d 638, 110 S.Ct. 1503].)
(11) Even assuming, arguendo, that Faretta applies to a parent in a juvenile dependency proceeding, we would have no difficulty, on this record, in determining that appellant's waiver of counsel rose to the standard enunciated in Faretta and Bloom. The juvenile court was careful to make appellant, and Brian's mother, aware of the "dangers and disadvantages of self-representation;" to alert them to the consequences of a true finding on *922 the petition, including the possibility that if reunification were unsuccessful their parental rights might be terminated so that Brian could be adopted; and to advise them specifically what rights they had, and would be giving up, if they admitted the petition's allegations. We are satisfied that even assuming Faretta applied, appellant's decision to proceed without counsel at that juncture was a knowing and intelligent choice.
Section 317 was amended effective January 1, 1989, two months after Brian was adjudicated dependent, to read: "(b) When it appears to the court that a parent or guardian of the minor is unable to afford and cannot for that reason employ counsel, and the minor has been placed in out-of-home care, or the petitioning agency is recommending that the minor be placed in out-of-home care, the court shall appoint counsel, unless the court finds that the parent or guardian has made a knowing and intelligent waiver of counsel."
In 1989, appellant failed to appear at the six-month review scheduled for May 1, 1989. He had apparently left the state at that juncture and his social worker, who was at that time unaware of his whereabouts, had no contact with him. The next hearing, a 12-month review, was scheduled for October 19, 1989. Brian's mother appeared but appellant did not. The matter was rescheduled for November 13, 1989, at which time appellant appeared with counsel.
In a nutshell, when appellant was first informed of his right to counsel in November 1988, he waived it. He was incommunicado at the time of the next hearing. Six months later, at the time of the scheduled twelve-month review hearing, appellant was represented. Nothing in this chronology persuades us that appellant's statutory right to counsel was violated.
Nor are we persuaded that the lack of counsel during this period was inherently prejudicial, as appellant suggests. His ability to regain Brian's custody and to end juvenile court jurisdiction was contingent on his efforts to address the problems which first led to the dependency. It was not until November 1989, however, after counsel was appointed, that appellant began this process. Appointing counsel for appellant at the May 1989 review hearing, when appellant was out-of-state and incommunicado, could hardly have improved appellant's chances to regain his son at that juncture.
*923 We conclude appellant has failed to make a showing sufficient to justify granting his writ petition, and we will accordingly deny it.[2]

II. APPEAL

A. Reunification and Visitation

(12) Appellant appears to argue in his opening brief that federal law, specifically 42 United States Code section 671 et seq. (part of the Adoption Assistance and Child Welfare Act, Pub.L. No. 96-272) (the Act) allows a juvenile court discretion to continue reunification and visitation beyond an 18-month period, and that the juvenile court here failed to exercise that discretion; he does not argue that reunification services should have been provided him beyond this point. In his reply brief, however, appellant explains that he could have continued his reunification efforts had a plan of guardianship or long-term foster care been instituted for Brian, instead of a termination of his parental rights.
Nothing in the Act, as appellant points out, puts a time limit on reunification efforts. 42 United States Code section 671(15) requires that in order for a state to be eligible for foster care and adoption assistance payments, it must have a plan which provides, inter alia, that "in each case, reasonable efforts will be made ... to make it possible for the child to return to his [or her] home ..." The Act also requires a "case review system" (42 U.S.C. § 671(16)) which includes review of each child's case "periodically but no less frequently than once every six months." (42 U.S.C. § 675(5)(B).)
The Act also requires that states have a "dispositional hearing... no later than eighteen months after the original placement..." which "shall determine the future status of the child...." This requirement is consistent with the provisions of the juvenile court law requiring permanency planning to take place no later than 18 months from disposition. (42 U.S.C. § 361.5.)
(13a) Nor has appellant persuaded us that a permanent plan other than adoption should have been made for Brian. (14) As we have already discussed, infra, if a child is adoptable, as Brian is, adoption is the statutorily preferred permanent plan: "`The goal of permanency planning is to end the uncertainty of foster care and allow the dependent child to form a long-lasting emotional attachment to a permanent caretaker.'" (Jones T. v. Superior Court (1989) 215 Cal. App.3d 240, 251 [264 Cal. Rptr. 4], quoting In re *924 Emily L. (1989) 212 Cal. App.3d 734, 742 [260 Cal. Rptr. 810].) Only if adoption is not possible, or if there are countervailing circumstances, or if it is not in the child's best interests are other, less permanent plans, such as guardianship or long-term foster care considered.
(13b) Appellant did not meet the showing which section 366.25, subdivision (d)(1)(A) requires before the juvenile court proceeds to consider permanent plans other than adoption, however. In addition to regular visitation, this subdivision requires that "the minor would benefit from continuing this relationship [with his or her parent]." Here, substantial evidence was adduced that continuing his relationship with his father would inure to Brian's detriment; pleasant and cordial father-son visits are, by themselves, insufficient to mandate a permanent plan other than adoption.
We have no difficulty concluding that the juvenile court properly terminated reunification efforts, and decreased visitation between Brian and appellant, so as to prepare Brian to take a permanent place in the home of his prospective foster-adoptive parents.

B. Delay

(15) Appellant also argues that further reunification time was necessary to remedy the delays in scheduling hearings. This argument is not only unpersuasive but is belied by the record.
This case was calendared as a contested 12-month review and permanency planning hearing commencing on January 5, 1990. It ended 14 court days and 8 months later, after it had become by virtue of the passage of time an 18-month permanency planning hearing. It was lengthy, in part, due to the diligence of appellant's trial counsel, and her desire to leave no stone unturned on her client's behalf: Indeed, the juvenile court went out of its way to accommodate appellant's counsel's obvious desire to litigate all potential issues fully and fairly at this hearing.
Nothing in this record, which we have reviewed in its entirety, supports an inference that respondent department was recalcitrant in order to stall a resolution here. On the contrary, it was in respondent's interests to have the proceedings concluded as quickly as possible, since it was recommending adoption as the permanent plan for Brian.
It is also apparent from the record that delay, in this instance, adhered to appellant's benefit: By December 1989 he had started making exemplary efforts towards completing the reunification service plan requirements. By *925 the conclusion of the hearings, nine months later, his counsel was able to argue with some force that her client had "turned his life around" and was now capable of parenting his son. Appellant's counsel never objected to any extended hearing date during this time. We thus reject appellant's argument that the delays in scheduling "violated due process and compounded other errors in the case."

DISPOSITION
The juvenile court's order is affirmed. The petition for a writ of mandate and/or prohibition is denied effective on the finality of our decision in the appeal. (Cal. Rules of Court, rule 24(a).)
Agliano, P.J., and Bamattre-Manoukian, J., concurred.
NOTES
[1] All further section references are to the Welfare and Institutions Code unless otherwise noted.
[2] Respondent counsel for Brian has requested that we strike certain exhibits to appellant's writ petition. Since we have not relied on any of these exhibits, we find it unnecessary to strike them.