[No. H019761. Sixth Dist. Dec. 3, 1999.]

In re BRITTANY C., a Person Coming Under the Juvenile Court Law.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND
CHILDREN'S SERVICES, v.
DEBBIE W., Defendant and Appellant.

848

## COUNSEL

Mary Holbrook, under appointment by the Court of Appeal, for Defendant and Appellant.

Ann Miller Ravel, County Counsel, and Teri L. Robinson, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**MIHARA, J.**—Debbie W. appeals from an order terminating her parental rights over her daughter, Brittany C. (Welf. & Inst. Code, § 366.26.)[1] Appellant contends that the juvenile court erred: (1) in its interpretation of section 366.26, subdivision (c)(1)(A); and (2) in its retroactive application of section 366.26, subdivision (c)(4). For the reasons stated below, we affirm.

### Statement of Facts

Appellant has five children. Brittany, who was born on July 15, 1991, is her third child. Brittany and her half siblings, Michael B. and Anastasia B., became the subjects of a dependency action on February 6, 1997. When

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

appellant was in the hospital for the birth of Michael in January 1997, she told hospital staff that she had used methamphetamine and alcohol during her pregnancy. Appellant also acted as if she were under the influence of an illegal substance while she was in the hospital. The Voluntary Family Reunification Program of the Santa Clara County Department of Family and Children's Services (Department) offered her services after her release. However, appellant missed appointments with the social worker, and she appeared to be under the influence when she did attend appointments. The children were initially placed with the paternal grandmother. They were removed from this placement when it was discovered that the grandmother had a prior conviction for child abuse and that the children previously placed with her had been removed from her custody. Brittany and Anastasia were placed in the home of a family friend, Carol R.

After petitions were filed in the juvenile court, the children were detained. The report, which was prepared for the jurisdictional hearing, disclosed appellant's long history of drug and alcohol abuse. Appellant told the social worker that she and her companion had problems paying for food and rent due to their drug use. Appellant also admitted that she continued to use methamphetamine after her children had been detained. Appellant had 10 previous referrals to the Department for physical abuse and neglect. Appellant's criminal record included three convictions for driving under the influence and one conviction for willful cruelty to a child. The jurisdictional report also noted that appellant's two oldest children, Sy G. and Nadien G., lived with their father. Based on psychological damage inflicted by appellant, there was a restraining order that prevented appellant from contacting these children.

On March 13, 1997, the juvenile court declared Brittany and her siblings dependents of the court. The juvenile court removed the children from appellant's custody and ordered family reunification services. At an interim review on April 24, 1997, the Department informed the juvenile court that appellant had not met with the social worker to discuss her case plan and had not complied with the court's orders. The Department also reported that one of appellant's visits with the children had been canceled because she was under the influence of drugs. Appellant also failed to appear for other scheduled visits.

The six-month review report stated that Brittany continued to live with Carol R. and was attending therapy. Appellant's visitation with the children was partially supervised due to her difficulty in managing three children. Brittany had nightmares after difficult visits with appellant. She also acted out during and after visits by kicking and pushing the social worker.

However, the report noted that appellant had made substantial progress in completing her case plan. She was living in a clean and sober living environment. As of July 3, 1997, only one of appellant's drug tests had been positive.

An addendum, which was dated October 2, 1997, stated that appellant had been terminated from her clean and sober living environment for failure to follow the rules. Appellant had attended one of her children's soccer games and an AA group meeting while under the influence of alcohol. Appellant also failed to communicate with the social worker for one month.

At the six-month review hearing on October 2, 1997, the juvenile court ordered that reunification services to appellant be continued.

The 12-month review report, which was dated March 26, 1998, recommended termination of reunification services. Appellant had tested positive for methamphetamine once, and she had failed to test several times. She had also submitted one "abnormally dilute" test. Appellant failed to provide attendance sheets that documented 12-step meeting attendance. However, appellant had made progress in having consistent visits. The report also stated that Brittany continued to be cared for by Carol R. Brittany was described as active and independent. She constantly tested limits set by Carol R., and she was also occasionally angry and defiant. Brittany's therapist reported that her progress with interpersonal skills was marginal.

A memorandum, which was dated April 23, 1998, informed the juvenile court that appellant had failed to visit her children for the last four visits and had failed to appear for drug testing since March 30, 1998.

An addendum, which was dated May 23, 1998, informed the juvenile court that appellant had been arrested for driving under the influence on February 9, 1998. Appellant was subsequently jailed for an outstanding warrant related to that offense. Appellant was still in custody on June 5, 1998, the date of the contested 12-month review hearing. Following the hearing, the juvenile court terminated reunification services and referred the matter for a section 366.26 hearing.

Appellant did not file a petition for writ relief.

On September 17, 1998, appellant filed a section 388 petition in which she sought six more months of reunification services. To support her petition appellant submitted documentation regarding her current efforts in substance abuse treatment.

On December 8, 1998, the juvenile court held both the section 388 and section 366.26 hearing. The evidence presented at this hearing outlined appellant's progress in addressing her substance abuse. Appellant had remained incarcerated until November 4, 1998, at which time she was released to the Regimented Correction Program. This program included 12 weeks of treatment while incarcerated and release to a sober living environment. The final phase of the program involved strict supervision by a probation officer. Appellant was currently in the final phase of the program.

The juvenile court denied the section 388 petition.

The section 366.26 report recommended adoption as the permanent plan. Brittany's therapist stated that termination of parental rights would affect Brittany and that a good-bye visit in conjunction with counseling would give her the opportunity for closure. The therapist also stated that Brittany's current play therapy centered on siblings with no parent figure. Brittany began referring to appellant as "Debby" and not "mom." Brittany no longer mentioned appellant in her weekly therapy appointments.

In an addendum, which was prepared on February 22, 1999, Brittany's statements regarding adoption were summarized. Brittany had told a friend that her foster parent was going to adopt her. When the social worker asked Brittany if she wanted to be adopted, she said that she wanted Jon C. (her siblings' father) to adopt her. She then said that she wanted appellant, whose name she spelled, to adopt her. Brittany explained that both Jon and Debby let her do what she wanted. Brittany also said that she would be "s.a.d." if she did not see "Debby" any more. When she was informed of Brittany's statements, her therapist stated that Brittany has "a connection" with appellant and that it is understandable that she would be sad about not seeing her.

Brittany subsequently told the social worker that she wanted to be adopted by her foster mother, because she "love[d] her." Brittany stated that she wanted the juvenile court to know "just that." The social worker asked Brittany's therapist if she felt Brittany was saying what she felt the social worker wanted to hear. The therapist stated that Brittany had always been "very vocal about her needs" and that she would not make a statement just to please the social worker. The therapist reported that Brittany was in denial about terminating visits with appellant and wanted to live with appellant or Jon C. The therapist also concluded that Brittany does not see her needs being met by appellant in a parental role.

When the section 366.26 hearing was held, Brittany had been living with Carol R. for about two years. Brittany was a special needs child due to

hyperactivity and attention deficit disorder, and thus she needed a highly structured environment. She attended special education classes and counseling. Both Carol R. and Jon C. stated that they would like to adopt Brittany. They had pending home studies.

Justin Henry, the social worker, testified that Brittany did not look to appellant to provide her basic needs. He described Brittany's relationship with appellant as positive, but that it was a relationship of friendship and play, not a parent/child relationship. In Henry's view, it would not be detrimental to Brittany for appellant's parental rights to be terminated.

Appellant testified that her relationship with Brittany was very healthy and improved. While she was incarcerated from July 1998 to November 1998, appellant had visited once a month with Brittany. Since December 1998, she had visited for one hour each week. All visitation had been supervised during this period. Brittany interacted positively with appellant during the visits. Appellant brought food and they discussed school and friends. Appellant also read to Brittany and corrected her inappropriate behavior. At the time of the hearing, appellant was working as a waitress. She planned to move to a three-bedroom house in February.

On March 9, 1998, the juvenile court terminated appellant's parental rights. The juvenile court also stated: "The relationship with her mother is a comfortable relationship in the aspect that Brittany enjoys seeing her mother, she enjoys her as a friend, and I think that, yes, she will miss that relationship, but it is not a parental relationship, and the court must balance the loss of a friend with the guarantee of having a permanent adoptive home, and the guarantee of the adoptive home weighs in favor of the child."

*Discussion*

When a hearing is held pursuant to section 366.26, the juvenile court must make one of four possible alternative permanent plans for the child (§ 366.26, subd. (b) (1)-(4)). The legislative preference for a permanent plan is adoption. (*In re Brian R.* (1991) 2 Cal.App.4th 904, 923-924 [3 Cal.Rptr.2d 768].) When the juvenile court finds that the child is adoptable, it must terminate parental rights unless it finds one of four specified circumstances in which termination would be detrimental (§ 366.26, subd. (c)(1)(A)-(D)). ■ At issue is whether the instant case falls within the exception of former section 366.26, subdivision (c)(1)(A), which states: "The parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship."

Appellant contends that the language of section 366.26, subdivision (c)(1)(A) is clear and unambiguous, and the Legislature has given particular meaning to the words used. Thus, she contends that the courts in *In re Autumn H.* (1994) 27 Cal.App.4th 567 [32 Cal.Rptr.2d 535], and *In re Beatrice M.* (1994) 29 Cal.App.4th 1411 [35 Cal.Rptr.2d 162], misinterpreted the statute by requiring the parent to prove the child would be greatly harmed by termination of parental rights and that the child must hold the parent in a parental role. We disagree.

This court interpreted section 366.26, subdivision (c)(1)(A) in *In re Beatrice M., supra,* 29 Cal.App.4th 1411. "Although the kind of parent/child relationship which must exist in order to trigger the application of section 366.26, subdivision (c)(1)(A) is not defined in the statute, it must be sufficiently strong that the child would suffer detriment from its termination. In *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 [32 Cal.Rptr.2d 535] the Fourth Appellate District defined the 'benefit' from continuing such a relationship as follows: 'In the context of the dependency scheme prescribed by the Legislature, we interpret the "benefit from continuing the [parent/child] relationship" exception to mean the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' (*In re Autumn H., supra,* 27 Cal.App.4th 567, 575.)" (*Id.* at p. 1418.)

Contrary to appellant's position, *Autumn H.*'s requirement that the parent prove that the child would be *greatly* harmed by termination of parental rights must be seen in context. Where a parent has failed to reunify with his or her child, and the juvenile court has found that the child is likely to be adopted, then the burden shifts to the parent to show exceptional circumstances. (*In re Brian R., supra,* 2 Cal.App.4th 904, 923-924.) To require that the parent need only show some, rather than great, harm at this stage of the proceedings would defeat the purpose of dependency law, that is, the protection of "children who are physically, sexually or emotionally abused, neglected or exploited. (§ 300.) Although the protection must focus on the preservation of the family whenever possible, the child who cannot be returned to his or her parent must be provided a stable, permanent home. (§ 366.25, subd. (a); § 366.26, subd. (b).)" (*In re Autumn H., supra,* 27 Cal.App.4th at p. 573.) Thus, we agree with the statutory analysis of *Autumn H.* and *Beatrice M.*

We also interpret the statute as requiring the parent to show that he or she has a parent/child relationship with the child, rather than a friendship. While friendships are important, a child needs at least one parent. Where a biological parent, such as appellant, is incapable of functioning in that role, the child should be given every opportunity to bond with an individual who will assume the role of a parent. Thus, we agree that "[i]nteraction between [a] natural parent and child will always confer some incidental benefit to the child. . . . The exception applies only where the court finds regular visits and contact have continued or developed a significant positive, emotional attachment from child to parent." (*In re Autumn H., supra*, 27 Cal.App.4th at p. 575; accord, *In re Beatrice M., supra*, 29 Cal.App.4th at pp. 1418-1419.) To hold otherwise would deprive children of the protection that the Legislature seeks to provide. (§§ 300, 366.25, subd. (a), 366.26, subd. (b).)

Here the evidence supports the juvenile court's finding that appellant failed to establish that she had maintained regular visitation with Brittany and that Brittany would benefit from continuing the relationship. Appellant has a substantial history of alcohol and drug abuse. As in almost every dependency case involving substance abuse, appellant waited far too long to take the necessary steps toward recovery. During the first 12 months of reunification services appellant did not visit Brittany consistently, and she failed to stop using drugs and alcohol. Between April 7, and November 4, 1998, appellant was incarcerated, and thus she was able to visit Brittany only once a month. Between December 1998 and March 1999, appellant visited Brittany once a week, and was strictly monitored in a substance abuse program. Thus, appellant visited consistently while she was incarcerated and during the three months following her release. However, Brittany did not see her needs being met by appellant in a parental role. Instead it was Carol R. who had provided Brittany with food, shelter, and guidance each day for two years. Though appellant and Brittany enjoyed a friendship, it did not resemble the daily nurturing that is characteristic of a parental relationship. Accordingly, the juvenile court did not err in concluding that the section 366.26, subdivision (c)(1)(A) exception to the termination of parental rights was inapplicable.

Appellant next contends that the juvenile court retroactively applied the 1998 version of section 366.26, subdivision (c)(4)[2] to the instant case. However, section 366.26, subdivision (c)(4) is applicable only if the court

[2]Former section 366.26, subdivision (c)(4) states: "If the court finds that adoption of the minor or termination of parental rights is not in the best interest of the minor, because one of the conditions in subparagraph (A), (B), (C), or (D) of paragraph (1) or in paragraph (2) applies, the court shall either order that the present caretakers or other appropriate persons shall become legal guardians of the minor or order that the minor remain in long-term foster care. Legal guardianship shall be considered before long-term foster care, if it is in the best

finds that adoption of the child or termination of parental rights is not in the best interests of the child. Here the juvenile court found that the minor was adoptable. The juvenile court also found that termination of parental rights was in the best interests of the child. Accordingly, section 366.26, subdivision (c)(4) is not applicable to the instant case.

### Disposition

The order is affirmed.

Bamattre-Manoukian, Acting P. J., and Wunderlich, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 16, 2000.

---

interests of the minor and if a suitable guardian can be found. When the minor is living with a relative or a foster parent who is willing and capable of providing a stable and permanent environment, but not willing to become a legal guardian, the minor shall not be removed from the home if the court finds the removal would be seriously detrimental to the emotional well-being of the minor because the minor has substantial psychological ties to the relative caretaker or foster parents. The court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the minor."