Filed 4/3/14  In re Cassidy M. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (El Dorado)

----

| | |
|---|---|
| In re CASSIDY M., a Person Coming Under the Juvenile Court Law. | C074898 |
| EL DORADO COUNTY DEPARTMENT OF HUMAN SERVICES, | (Super. Ct. No. PDP2012-0134) |
| Plaintiff and Respondent, | |
| v. | |
| CRAIG M., | |
| Defendant and Appellant. | |

Craig M., father of the minor, appeals from orders of the juvenile court terminating his parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Father contends the court erred in failing to find he established the beneficial parental relationship exception to termination of parental rights.  We shall affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

The four-year-old minor was removed from parental custody in November 2012 due to her mother's increasingly serious alcohol abuse and her father's failure to protect her from mother's neglect. The minor was developmentally on track but very aggressive with other children, had difficulty with sleeping schedules, suffered from nightmares and showed extreme fear of medical and dental professionals, although she was showing some improvement in foster care. After placement, the minor began therapy. The minor's teeth were in very poor condition and she was scheduled for evaluation of reconstructive surgery to correct a cleft palate. The minor had supervised visits and was excited to see father, who visited sporadically due to his employment. The minor was less happy to see mother but enjoyed the crafts and games mother brought to visits. The court sustained the petition, denied services to both parents and set a selection and implementation hearing.

The court granted the parents' request to appoint an expert to perform a bonding study. The study, conducted in July 2013, concluded that the minor had a strong positive bond to father and was less bonded to mother. The study further concluded that it would not be detrimental to terminate the minor's relationship with mother. However, because the minor's bond with father was more positive, it would more likely be harmful to terminate that relationship, although it was not clear that it would be detrimental to do so. Termination of the minor's relationship with father was likely to cause her some lasting and potentially irreparable harm. The study noted that father was unlikely to be able to be the minor's primary custodian and the court had to weigh the benefits of permanence against the harm to the minor from severing the relationship.

The report for the selection and implementation hearing stated the minor continued to be developmentally on target and confirmed the need for reconstructive and oral surgery to deal with her cleft palate and severely decayed teeth. The minor remained

2

in therapy for anger control and needed clear limits and boundaries. Although both parents visited sporadically at the beginning of the case, after the frequency of visits was reduced at disposition, mother attended all visits and father attended most of them. Visits were generally positive and the minor appeared to enjoy them. The minor's sleeping patterns had stabilized and she no longer had nightmares. The minor expressed a desire to remain as placed. The current foster parents were interested in adopting the minor who was beginning to establish a positive attachment to them. The report recommended termination of parental rights with a permanent plan of adoption to provide the permanence and stability the minor needed.

An addendum, filed in August 2013, stated the minor continued to do well in the current prospective adoptive home. The report stated that termination of contact with the parents would not be detrimental, but would serve the minor's best interests because the advantages of adoption outweighed the loss the minor would suffer from termination.

Eugene Roeder, Ph.D., who conducted the bonding assessment, testified at the selection and implementation hearing. He confirmed his findings that there was a strong positive relationship between the minor and father and that the minor's relationship with mother was not as strong. He further testified "it would likely be harmful" to terminate the relationship between the minor and father; that is, it would be likely to cause the minor some lasting and potentially irreparable damage. Dr. Roeder stated that while there was a *preponderance* of evidence that termination of the relationship would be detrimental to the minor, he could not say that the evidence rose to the level of clear and convincing. Roeder explained that the difference between detriment and harm was reparability, thus, while there would be some harm in terminating a positive relationship, detriment would occur only if the harm never went away even with a stable home and counseling. Consistency, security, and developing an alternative positive attachment were factors that helped overcome the harm. In Roeder's opinion, it was clearly better to

3

allow the minor to establish permanent bonds with a family and have permanency than to be in an indeterminate status in order to continue a relationship with her father. Roeder testified that it was always better for a child to have permanence and security.

The adoption worker testified that father had attended all visits available since July 2013 and the minor was very excited to see him. She agreed with Dr. Roeder that the minor had a strong positive bond to father but did not agree that severing the bond would be detrimental. The adoption worker said the minor was doing extremely well in the current foster home and had a positive bond to the foster parents. The adoption worker acknowledged that the minor would suffer some harm from termination of parental rights but was able to attach to new parents and would be able to overcome the harm. The adoption worker testified that the minor's therapist said the minor needed structure and boundaries. In the adoption worker's opinion, permanency was more important for the minor than maintaining a relationship with father.

The court terminated mother's parental rights. As to father, the court was aware of the need to balance the benefit of adoption against the benefit to the minor of continued contact and noted Dr. Roeder was equivocal as to whether harm to the minor from termination of parental rights rose to the level of detriment. After considering the evidence, the court concluded it was clear that father's parental rights should be terminated and ordered a final visit.

## DISCUSSION

Father contends the court erred in terminating his parental rights because the beneficial parental relationship exception was shown by Dr. Roeder's bonding study and testimony that there would be detriment to the minor in terminating parental rights.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for

4

a minor child. . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]' [Citations.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A*. (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child . . . ." (§ 366.26, subd. (c)(1)(B).) The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights. (*In re Cristella C*. (1992) 6 Cal.App.4th 1363, 1372-1373; *In re Melvin A*. (2000) 82 Cal.App.4th 1243, 1252; Evid. Code, § 500; Cal. Rules of Court, rule 5.725(d)(4).)

Termination of parental rights may be detrimental to the minor when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) However, the benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 575.) Even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child. (*In re Teneka W*. (1995) 37 Cal.App.4th 721, 728-729; *In re Beatrice M*. (1994) 29 Cal.App.4th 1411, 1418-1419; *In re Brian R*. (1991) 2 Cal.App.4th 904, 924.)

Assuming regular visitation occurred, the question is whether the evidence established that the minor would benefit from continuing the parental relationship. It is apparent that the minor's bond with mother was not strong enough to outweigh the benefit to the minor of adoption. However, there was evidence of a strong positive bond between the minor and father. Other evidence showed the minor had behavioral and emotional issues that were beginning to resolve in her foster placement and with therapy. The therapist said the minor needed structure and boundaries. Both the adoption worker and Dr. Roeder stated that permanence and stability were best for the minor. Roeder did testify that it was more likely than not that the minor would suffer detriment from severing the parent-child relationship, however, he was unable to say that there was compelling evidence detriment would result from termination of parental rights. There was also evidence the minor was able to make a positive attachment to her foster family, a factor Roeder suggested would mitigate the harm from termination of parental rights. Further, the minor was doing very well in the placement and expressed a desire to remain there. The court weighed all the factors and the evidence and concluded the exception to termination had not been established and that termination of parental rights was appropriate. While there is some evidence to support the existence of a beneficial parental relationship, substantial evidence supports the juvenile court's conclusion that the benefits of permanence and stability outweighed the benefits to the minor of continued contact with father. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) We may not reweigh the evidence to reach a different conclusion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

6

## DISPOSITION

The orders of the juvenile court are affirmed.


       BUTZ       , J.


We concur:


       RAYE       , P. J.


       ROBIE       , J.