Filed 10/27/15  In re L.J. CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re L.J., a Person Coming Under the Juvenile Court Law. | |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>S.W.,<br><br>     Defendant and Appellant. | C079451<br><br>(Super. Ct. No. JD234116) |

S.W. (mother) appeals from an order terminating her parental rights with respect to minor L.J.  She contends the juvenile court erred in finding the parent-child relationship exception did not apply to preclude termination of her parental rights.  We conclude substantial evidence supports the court's finding of inapplicability of the parent-child relationship exception to termination of mother's parental rights.  Accordingly, we affirm the court's orders terminating mother's parental rights.

FACTUAL AND PROCEDURAL BACKGROUND

Prior to L.J.'s birth in December 2013, mother's parental rights already had been terminated for another of her children.  As a result, a psychological evaluation of mother

1

was completed before L.J. was born. The evaluation concluded mother would be "able to care for baby appropriately. However, given patient's history . . . report [was] filed."

After L.J. was born, hospital staff reported to the Sacramento County Department of Health and Human Services (the Department) that they had "grave concerns" regarding the child's safety. They described mother as sweet and cooperative but slow to respond, and said she did not make eye contact. When they asked her about living arrangements after she and the child were discharged from the hospital, mother appeared confused but said she was going home with relatives.

A Welfare and Institutions Code section 300, subdivision (b)[1] petition was filed on December 1, 2013. The Department alleged the child was at substantial risk of suffering serious physical harm or illness due to mother's emotional and mental health issues. The Department further alleged mother was not taking prescribed medication, suffered from severe depression and somatic complaints, and her parental rights had been terminated for a half-sibling.

Mother, who was previously diagnosed with major depressive disorder and posttraumatic stress disorder, told the social worker she intended to return to counseling and resume her psychotropic medications. But she had nowhere to live with the child after they were discharged from the hospital. L.J. was placed in foster care and mother was granted reunification services.

Between December 27, 2013, and June 13, 2014, mother had approximately 35 visits with L.J., all of which were supervised. On September 3, 2014, L.J. was placed with foster parents who were interested in adopting her.

By the six-month review hearing in December 2014, mother had completed two parenting classes, participated in weekly anger management and depression groups, and was living in an apartment with provisions for L.J. Mother also saw her psychiatrist

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

twice a month for medication. The court continued services for mother, keeping L.J. in the care and custody of her foster parents.

At the 12-month review hearing, the social worker recommended terminating services. Mother continued her visits with L.J., though the visits were now unsupervised and had increased from two hours twice a week to eight hours twice a week. On January 9, 2015, however, the social worker observed a visit. She asked mother to articulate L.J.'s schedule or needs at her current developmental stage and mother was unable to do so. The social worker had to prompt mother to give L.J. a drink and a snack, then had to prompt mother again to give L.J. more of the snack. Twice the social worker had to prompt mother to wipe L.J.'s nose. The social worker determined mother had not demonstrated she was capable of providing for L.J. on a long-term basis because mother continued to need prompts to meet L.J.'s needs. The social worker also was concerned that mother had only just located housing and had not lived independently before. The court followed the Department's recommendation and terminated mother's reunification services.

Following the termination of mother's services, and because of the Department's concerns regarding mother's inability to meet L.J.'s needs, the Department reduced mother's visits to two-hour supervised visits once a week. Mother's visits with L.J. remained positive but the Department noted L.J. experienced "a few moments of discomfort" transitioning from her foster parents to mother. On the other hand, L.J. transitioned back to her foster parents and away from mother without distress. During the visits, mother did not always read L.J.'s cues and needed some prompting to recognize L.J.'s needs and/or wants.

Accordingly, the Department opined that although L.J.'s visits with mother were friendly and positive, L.J. did not have a parent-child relationship with mother. L.J. was, however, thriving in her foster home and L.J.'s foster parents still wanted to adopt her. The Department recommended mother's parental rights be terminated to free L.J. for

adoption. Mother objected, but the juvenile court adopted the Department's recommendation and terminated mother's parental rights.

## DISCUSSION

Mother contends the juvenile court erred in terminating her parental rights because she visited the child regularly and the child had a positive emotional attachment to her, indicating the application of the parent-child relationship exception.

### A.

### *Legal Principles*

Reviewing for substantial evidence (*In re Derek W.* (1999) 73 Cal.App.4th 823, 825, 827 (*In re Derek W.*)), we affirm the juvenile court's finding mother did not establish this statutory exception to the termination of her parental rights.

At the section 366.26 hearing, the juvenile court is required to select and implement one of four possible permanent plans for the child. The permanent plan preferred by the Legislature is adoption. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411 (*In re Beatrice M.*).) If a child is likely to be adopted, the court is directed to terminate parental rights and order the child placed for adoption. (§ 366.26, subd. (c)(1).) However, where "[t]he court finds a compelling reason for determining that termination would be detrimental to the child," such as where the parent-child relationship exception applies, the court may avoid termination of parental rights. (§ 366.26, subd. (c)(1)(B)(i).) Mother had the burden to show this statutory exception applied. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.) We review the evidence in the light most favorable to the prevailing party and indulge all legitimate and reasonable inferences to uphold the court's rulings. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 (*In re Autumn H.*).)

### B.

### *Analysis*

Termination of parental rights may be detrimental to the minor when: "The parents . . . have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) There

4

was no dispute mother maintained regular visitation and contact with the child. Nonetheless, the juvenile court found the exception did not apply. Though mother and the child appeared to have a positive relationship, there was no evidence the child regarded her in a parental role.

For the exception to apply, the benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H., supra*, 27 Cal.App.4th at p. 575.) Even frequent and loving contact, however, is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child. (*In re Beatrice M., supra*, 29 Cal.App.4th at pp. 1418-1419; *In re Teneka W.* (1995) 37 Cal.App.4th 721, 728-729; *In re Brian R.* (1991) 2 Cal.App.4th 904, 924.)

Here, L.J. was 19 months old when the court terminated mother's parental rights. Removed from mother only days after she was born, L.J. spent her entire life in another's care, and she had been with her prospective adoptive parents for approximately seven months -- nearly half her life. Mother's parental rights were terminated because despite the consistent and positive visitation, mother was still unable to read L.J.'s cues in order to understand what L.J. needed or wanted. Mother required prompting from others in order to respond to L.J.'s needs and wants.

In addition, when L.J. visited with mother, she expressed "discomfort" transitioning from her prospective adoptive parents to her mother. She had no similar difficulties transitioning back to them at the end of the visit. Based on these observations, the social worker who assessed L.J. found mother did not have a parental

5

relationship with L.J.  Thus, the record provides sufficient evidence to substantiate the juvenile court's finding the parent-child relationship exception does not apply.

DISPOSITION

The orders of the juvenile court are affirmed.


_____/s/_____
HOCH , J.


We concur:


_____/s/_____
RAYE, P. J.


_____/s/_____
RENNER, J.