Filed 6/3/13  In re William D. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re WILLIAM D. et al., Persons Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY HEALTH AND SOCIAL SERVICES DEPARTMENT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH D. & MARY F.,<br><br>        Defendants and Appellants. | A136667<br><br>(Solano County<br>Super. Ct. Nos. J40976, J40977) |

The juvenile court terminated the parental rights of appellants Joseph D. and Mary F. to their minor children, William and James D.  Both parents appeal,[1] challenging the juvenile court's determination and alleging that Joseph's bond with the minors outweighed the benefits of adoption.  (Welf. & Inst. Code,[2] § 366.26, subd. (c)(1)(B)(i).)  We affirm the juvenile court orders.

---

[1] Mary filed a notice of appeal after the juvenile court rendered its decision, but before it issued its formal order terminating her parental rights.  Her notice of appeal was premature, but we deem it to have been filed immediately after the order issued.  (Cal. Rules of Court, rule 8.104(d).)  Joseph filed his notice of appeal three days after the order terminating his parental rights.  Thus, both appeals are timely.

[2] All statutory references are to the Welfare and Institutions Code.

1

# I. FACTS[3]

In September 2008, appellants Joseph D. and Mary F. became the parents of William D. A year later sibling James D. was born. In July 2010, the parents left the minors at a church nursery and disappeared for two hours. James was suffering from an infection on his leg that required immediate hospitalization, which neither parent had obtained. When they returned to the nursery, Joseph and Mary were arrested and incarcerated for child endangerment. The minors were placed in foster care.

Respondent Solano County Health and Social Services (department) filed a juvenile dependency petition in July 2011, alleging failure to protect and failure to provide for support. (§ 300, subds. (b), (g).) The department offered evidence of general neglect. The parents were homeless and living in their vehicle. Mary appeared to have substance abuse or mental health issues. The minors were ordered to remain detained. Visitation and reunification services were ordered for the parents. In September 2011, the juvenile court sustained the allegations of an amended juvenile dependency petition on failure to protect, and sibling abuse grounds. (§ 300, subds. (b), (j).) In October 2011, the juvenile court approved the removal of the minors from the parents and set a March 2012[4] date for a six-month review hearing.[5]

In advance of the scheduled review hearing in March, the department recommended that the juvenile court maintain the minors' out-of-home placement, terminate reunification services, and set a date for a permanency planning hearing. (§ 366.26.) It reported that the boys were bonded to their foster parents and appeared comfortable in that home. The parents' compliance with the requirements of their case

---

[3] Some of these facts are taken from two earlier opinions relating to this family—mother Mary F.'s appeal challenging the dispositional order and her petition for writ review of the juvenile court order terminating her parental rights and setting the matter for a permanency planning hearing. (See *Mary F. v. Superior Court* (July 30, 2012, A135556) [nonpub. opn.]; *In re James D.* (Aug. 27, 2012, A133545) [nonpub. opn.].)

[4] All subsequent dates refer to the 2012 calendar year.

[5] Mary and Joseph appealed these orders, without success. (*In re James D.* (Aug. 27, 2012, A133545) [nonpub. opn.].)

plan—attending parenting classes, participation in developmental assessments for the minors, providing suitable housing, and successful substance abuse testing—was incomplete, at best. They denied having substance abuse issues, and initially refused to provide their home address to the department.

During this six-month period, Joseph and Mary had weekly, three-hour supervised visits with their sons. The parents attended all visits in September 2011, although they were an hour late one week. They cancelled two visits in October 2011, all November 2011 visits, two visits in December 2011, and one in January because of claims of illness. Joseph showed up for one visit, but left early because of Mary's claimed illness. The visits that did occur were appropriate, and the parents interacted well with the children. The social worker attended one visit that was cancelled. She observed William kicking, crying, and screaming "momma" when carried from the visitation area.

At the six-month review hearing, the social worker offered additional evidence of Joseph and Mary's failures to complete parenting classes, to appear for drug testing, or to participate in William's individual education plan meeting. After Joseph finally provided a home address to the department, the social worker made an unannounced visit in March. Claiming a contagious illness, the parents would not permit her to enter the home, although they admitted that some friends were with them at the time. There was evidence that Mary was highly emotional, and that Joseph had concerns about her mental health.

The social worker also offered more visitation evidence. Joseph and Mary visited the minors on January 20 and 27, and February 3, 10, and 17. They missed a late February visit because Joseph said he was sick. There were no March visits. Mary did not visit in April, again because of illness.

At the close of the review hearing, the juvenile court concluded that returning the minors to their parents would create a substantial risk of detriment to them. In May, it found that Joseph and Mary did not substantially comply with their case plan, but actively undermined it with claimed medical conditions that precluded them from participating in that plan's requirements. Based on clear and convincing evidence, the

3

juvenile court found that both parents failed to participate regularly in, and make substantial progress in their court-ordered treatment plan. It terminated their reunification services, and set a date for a permanency planning hearing. (*Mary F. v. Superior Court* (July 30, 2012, A135556) [nonpub. opn.].)[6]

At this time, visitation was reduced to one two-hour visit per month. William and James were placed in a Sacramento County foster home with potential adoptive parents. In August, the department recommended the termination of Joseph and Mary's parental rights, and a permanent plan of adoption for both minors at the upcoming permanency planning hearing. Mary did not visit with William and James at all in May, June, and July. Joseph saw the minors in May. At his June visit, the minors did not seem to know Joseph at first although they warmed to him later. James cried a bit when the visit was over because he still wanted to play, but was happy once he was returned to his foster parents. Joseph stopping visiting William and James after this visit. After three months in his foster home, William recognized his foster parents as adults to seek out when he felt unsafe. Both minors were attached to their foster parents.

Joseph and Mary contested the department's recommendation. At the September 19 hearing, there was evidence that the parents had a good visit with the minors in August. The minors returned easily to their foster parents when it was over, running to the foster parents, seemingly excited to see them and hugging them. However, William and James were physically ill the evening of the visit and again the following morning. Joseph asked the department to arrange a visit with the minors in September.

At the close of the hearing, the juvenile court found the minors to be adoptable and terminated Joseph and Mary's parental rights. Visitation was terminated as detrimental to the minors, although a final visit was to be arranged. Both parents appealed this determination. In September, the foster parents were granted de facto parent status.

---

[6] In July 2012, we rejected a challenge to this order. (*Mary F. v. Superior Court* (July 30, 2012, A135556) [nonpub. opn.].)

## II. BONDING WITH FATHER

Joseph contends that the juvenile court had no authority to terminate his parental rights because the evidence showed that William and James shared a beneficial bond with him that outweighed any benefit of adoption. Mary joins in this contention, asserting that the termination of her parental rights was improper because of Joseph's bond with the minors. (See § 366.26, subd. (c)(1)(B)(i).)

By statute, a juvenile court may not terminate parental rights if it finds a compelling reason that termination would be detrimental to the minors in a case in which the parent maintained regular visitation and the minors would benefit from continuing their relationship with their parent. (§ 366.26, subd. (c)(1)(B)(i).) At the permanency planning hearing, Joseph argued that this exception applied. The juvenile court disagreed, finding that he had substantially complied with the visitation order but that he had not met the burden of showing that the minors would benefit from continuing their relationship with him.

Thus, Joseph's challenge is one to the sufficiency of the evidence supporting the juvenile court's implied finding that subdivision (c)(1)(B)(i) of section 366.26 did not apply.[7] (See *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; see also *In re Zachary G.* (1999) 77 Cal.App.4th 799, 810-812; *In re Casey D.* (1999) 70 Cal.App.4th 38, 50-53.) When reviewing such a challenge, we review the whole record in the light most favorable to the juvenile court's finding to determine whether substantial evidence supported termination of parental rights. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Rico W.* (1986) 179 Cal.App.3d 1169, 1173.) We have no power to reweigh the evidence, but determine only if there is sufficient evidence to support the juvenile court's finding. (*In re Jacqueline G.* (1985) 165 Cal.App.3d 582, 585.) Once the juvenile court concludes—

---

[7] One court has suggested that this determination should be reviewed for an abuse of discretion rather than for substantial evidence. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351-1352.) As that decision acknowledges, this may be a distinction without a difference. (*Id.* at p. 1351.) While we analyze whether substantial evidence supports the juvenile court's determination, if we were to apply an abuse of discretion standard, we would come to the same result in the matter before us.

as here—that the minors are adoptable, the parent bears the burden of proving that the statute's exceptional circumstances exist to bar termination of parental rights. (*In re Autumn H., supra,* 27 Cal.App.4th at p. 574; see *In re Brian R.* (1991) 2 Cal.App.4th 904, 923-924.)

Courts interpreting the language of subdivision (c)(1)(B)(i) of section 366.26 have noted that its application must be determined on a case-by-case basis. In all cases, the interaction between a natural parent and a child confers some incidental benefit to the children. "The significant attachment from child to parent results from the adult's attention to the child's needs for physical care, nourishment, comfort, affection and stimulation. . . . The relationship arises from day-to-day interaction, companionship and shared experiences." The exception applies only when regular visits continue or a significant positive, emotional attachment between child and parent has been developed. (*In re Autumn H., supra,* 27 Cal.App.4th at pp. 575-576; see *In re Jasmine D., supra,* 78 Cal.App.4th at p. 1347.) The relationship described in the statute must be a real parental relationship that is of sufficient strength that the minors would suffer detriment if it were terminated. (*Id.* at pp. 1348-1350.)

The record on appeal provides substantial evidence supporting the juvenile court's finding that no exceptional circumstances exist in this case. William and James were bonded to their foster parents, rather than to Joseph. The termination of his parental rights would not be detrimental to the minors. Thus, Joseph has not met his burden of proving that the statutory exception barring termination of his parental rights applies. (See § 366.26, subd. (c)(1)(B)(i); see also *In re Autumn H., supra,* 27 Cal.App.4th at p. 574; *In re Brian R., supra,* 2 Cal.App.4th at pp. 923-924.)

### III.  MOTHER'S APPEAL

By her own admission, Mary's success on appeal turns on Joseph obtaining a reversal of the order terminating his parental rights. As we affirm the aspect of the order terminating his parental rights, we also affirm that part of the order terminating her parental rights.

The orders are affirmed.

_____
REARDON, J.

We concur:


_____
RUVOLO, P. J.


_____
RIVERA, J.