Filed 9/4/14  Maria G. v. Super. Ct. CA2/8
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MARIA G., | No. B256535 |
| Petitioner, | (Los Angeles County Super. Ct. No. CK69986) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING.  Petition for extraordinary writ.  (Cal. Rules of Court, rule 8.452.)  Akemi Arakaki, Judge.  Petition denied.

Los Angeles Dependency Lawyers, Inc., Law Office of Marlene Furth, Melissa Chaitin and Julia Hanagan for Petitioner.

No appearance for Respondent.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Real Party in Interest.

## INTRODUCTION

Maria G. (mother) is the parent of X.G. (born May 2012) and A.G. (born June 2013).[1] The juvenile court removed the children from her custody after police officers found many baggies of cocaine and methamphetamine she was hiding under A.G.'s bassinet mattress and in her plush toy. Mother has filed a petition for extraordinary relief under rule 8.452 of the California Rules of Court. She argues the juvenile court erred in terminating reunification services and failing to return the children to her custody. We reject this argument and deny the petition.

## PROCEDURAL BACKGROUND AND FACTS

Mother and Los Angeles County Department of Children and Family Services (DCFS) have set out the complete history of the juvenile court proceedings in their papers. We need not repeat that history except when necessary to address the specific claims for extraordinary relief.

### 1. Petition and Jurisdiction[2]

The children were detained on July 2, 2013, after police executed a search warrant on June 18, 2013, and seized 30 bindles of cocaine and 35 baggies filled with methamphetamine from mother's residence. These drugs were found in her bedroom, hidden underneath A.G.'s bassinet mattress in a vinyl zipper bag and in a baby plush toy. The zipper bag also contained $220 in small denominations, and an additional $189 was found inside a top dresser located in the bedroom closet. When police stated she was being arrested for possessing drugs for sale, "[mother] nodded her head . . . as if in agreement and did not dispute the evidence."

---

[1] The children's maternal half-sibling, E.C. (born October 1997), is not a subject of this writ proceeding.

[2] The family was the subject of two prior child welfare referrals concerning E.C. in December 2010. The first was because E.C. was using drugs, was sexually active, and did not have proper supervision or discipline. The second was because E.C. was engaged in sexual intercourse with her minor boyfriend, was using drugs and alcohol, and had "passed out" and woke up without any clothes.

When the social worker visited mother's residence, the outside was dirty and broken glass bottles, soda cans and trash were scatted throughout the yard, with young children playing there in bare feet. One bedroom in the house had no electricity, dogs were wandering around the house, clothes were everywhere, as well as bugs and roaches. The social worker reported that mother denied the drugs found in her bedroom belonged to her. She also denied using or selling drugs.

Mother's criminal history showed a 2009 felony conviction for transporting and selling narcotics, and a 2010 felony conviction for possession of a controlled substance for sale, as well as for transporting and selling narcotics. She was placed on probation for the 2009 conviction, with a 180-day jail sentence. As a result of her 2010 conviction, her probation was revoked in the 2009 case, and she was sentenced to concurrent time on the two cases with a total sentence of three years eight months.

At the jurisdiction hearing on August 13, 2013, mother pled no contest and the court sustained the petition asserting mother had created a detrimental and endangering environment for the children's health and safety by having cocaine and methamphetamine in the home within access of the children. The juvenile court ordered reunification services for mother, including parenting classes and individual counseling to address case issues, including drug awareness. Mother was also to have monitored visits with the children.

## 2. *March 2014 Review Hearing*

For the six-month hearing, DCFS reported that initially the children had been placed with relatives, but in separate homes. Later, in August 2013, X.G. was placed in the same relative's home as A.G. By October 2013, the children were living with Mrs. J., a maternal first cousin twice removed, and her husband. The children were thriving and doing well in their care. The placement was very stable. Mrs. J. and her husband had created a home for the children, were affectionate with both, and wanted to adopt them.

Mother was convicted in February 2014 and sentenced to seven years in prison for possession of drugs and possessing them for sale. She had completed a parenting class and attended some individual counseling prior to her incarceration. Mother also had

regularly visited the children while supervised by Mrs. J. and her husband. In her interview with the social worker, mother did not discuss her circumstances and was not forthcoming with her situation. Before her incarceration, she had been living with a friend and had no plans to work or get her own place.

DCFS recommended that the juvenile court terminate mother's reunification services and set a contested permanent planning hearing. The court set the matter for a contested hearing.

### 3. May 2014 Hearing

For the contested hearing, mother submitted a letter from her therapist. The letter indicated mother began counseling sessions on August 1, 2013, and ended them on February 7, 2014. The therapist indicated mother had made progress, understood the problems leading to her children's detention, and was concerned for their welfare. As an example of mother's understanding, the therapist said mother was "concerned" with her older daughter's use of drugs and had taken her younger children to see a doctor when sick. She also regularly visited the children. The therapist indicated she had not observed anything leading her to believe mother would pose a risk to the children.

Counsel for DCFS asked the court to terminate mother's reunification services. Counsel argued mother had participated in some counseling, but noted the there was no indication mother had addressed the issue of her drug sales, for which she was convicted. Counsel argued mother could not provide the children with a safe plan given the fact she was sentenced to seven years in prison.

Counsel for DCFS asserted that mother's request that the juvenile court make a home-of-parent order so she could move the children around at will was not in the children's best interest. The children had been in four placements, and their current caregiver was a blood relative who was providing the children with stability, permitting E.C. to visit with the children in her home, and allowing mother to visit in her home on a daily basis before she was incarcerated. Finally, counsel argued mother had not fully complied with her case plan and would not be able to do so within the reunification period.

Counsel for the children also argued in favor of terminating services. Counsel asserted mother wanted the children placed in the home in which they were currently residing, that mother was enjoying visitation at that placement, and that mother had caused the children to move multiple times by arguing with the family member caregivers, and that this was contrary to the children's best interest. Although mother had previously thwarted the children's placements, she at no time made an appropriate plan for the children despite knowing she had serious criminal charges pending against her.

Mother's counsel asked the juvenile court to make a home-of-parent order and allow mother to make a plan for the children's care with a relative. Counsel further argued mother had completed her case plan, that mother completed a parenting class, and that mother's therapist had written she did not observe any behavior she believed would pose a risk to the children. Counsel said she was not asking for a new relative placement, but rather, providing "a plan with a relative who would be willing to care for the children while [mother] is incarcerated." Counsel asked the court to return the children to mother, or in the alternative, offer mother additional services.

The juvenile court said it understood mother's position, but agreed with minors' counsel. The court did not believe mother completed her case plan or that she had rectified the situation which led to the children's removal to the point that it could make a home-of-parent order. The court found return of the children would create a substantial risk of detriment to the safety, physical, and emotional well-being of the children. The court acknowledged mother was making progress, but referenced the fact that mother's conduct led to her arrest, conviction, and the lengthy sentence she was currently serving. Mother simply "ha[d] not made significant progress in resolving the problems that led to the removal of the children nor demonstrated the capacity and ability to complete the objectives of the treatment plan based on her current situation and her current incarceration."[3]

---

[3]     The court also stated, "I need to clarify for the record I am not saying that this court is terminating [family reunification] because of her incarceration. I am indicating

5

Mother challenges this ruling.

## DISCUSSION

Mother contends there was insufficient evidence of a substantial risk of detriment to her children if they were released to her custody. We disagree.

"The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time. [Citations.] Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect." (*In re Marilyn H*. (1993) 5 Cal.4th 295, 307.)

Welfare and Institutions Code section 366.21 provides that the court must order the return of the child to his or her parents at the six-month review hearing unless the court finds, by a preponderance of the evidence, that returning the child to the parent would create a substantial risk of detriment to the child's safety, protection, or physical or emotional well-being. In making its determination, the court is required to consider the efforts or progress, demonstrated by the parent, and the extent to which the parent took advantage of the services provided. The failure of the parent to participate regularly and make substantive progress in court-ordered treatment programs is prima facie evidence that the return would be detrimental. (§ 366.21, subd. (e).)

The mere completion of the technical requirements of the reunification plan—such as attending counseling sessions and visiting the children—is only one consideration. (*In re Dustin R*. (1997) 54 Cal.App.4th 1131, 1139-1140.) The juvenile court must also consider the progress the parent has made towards eliminating the conditions leading to the child's placement out of the home. (*Ibid.*) In making its determination, the juvenile

based on the length of her sentence and the fact that she was not able to complete the details of her case plan prior to her incarceration, the court does not believe that based on the length of the sentence and her inability to reunify with the children prior to that, that it would be inappropriate for the court to proceed in this fashion."

court must weigh recent efforts against previous failings to evaluate the likelihood that the parent will maintain a stable existence for the remainder of the child's life. (*In re Brian R.* (1991) 2 Cal.App.4th 904, 918.) The juvenile court's determination is reviewed for substantial evidence. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763.)

Substantial evidence supports the juvenile court's finding that the children would be at substantial risk of detriment if returned to mother's custody and removed from placement with Mrs. J. and her husband. Although mother did complete a parenting class and participated in counseling, the record supports the finding that mother had not made sufficient progress in addressing the primary reason her children were removed from her—drug trafficking and the storage of drugs not only within reach of the children, but within their belongings.

Mother's therapist did state in her letter that mother had "shown progress." But what is more important is what is missing from the letter, given the context of mother's case. There is no indication in the report that mother had been arrested for dealing cocaine and methamphetamine, that she stored the drugs in her baby's mattress and toy, or that she had prior convictions for similar behavior. There was no evidence that mother ever acknowledged responsibility for the significant amount of drugs she hid in her child's mattress and toy for dealing, no expression of remorse whatsoever concerning her actions, or an understanding of the grave danger in which she placed her children.

To the contrary, the record shows mother denied any responsibility for her actions and insisted the drugs were not hers. Even when the social worker interviewed mother for the May 2014 hearing, mother did not discuss her circumstances and was not forthcoming with her situation. Given mother's criminal history (which included her arrest on drug sale charges while on probation for a similar conviction), her failure to take responsibility for her actions and her lack of remorse, there was no reason for the juvenile court to believe this would not be mother's last incarceration for narcotics offenses.

Mother's therapist did indicate in her letter that she had not observed anything while working with mother that led her to suspect she would pose a risk to the children. But in context, as well as there being no acknowledgement in the letter that mother was

facing a lengthy prison sentence, the therapist's statement in the letter merely referred to fulfilling mother's stated desire for "unmonitored visits" with the children, not an outright approval of releasing the children to mother's custody.

Finally, mother had been sentenced to seven years in prison and therefore was unable to care for her children by the time of the six-month hearing. Mother does not provide any authority for the proposition that the juvenile court was required to return the children to her custody at the six-month hearing despite the fact she was incarcerated and sentenced to seven years in prison for again dealing drugs. The case law mother cites in her petition is inapposite and does not support her contention that the juvenile court erred by not returning the children to her custody despite her incarceration.

## DISPOSITION

The petition is denied. This opinion is final forthwith as to this court under rule 8.264 of the California Rules of Court.


FLIER, J.

WE CONCUR:



RUBIN, Acting P. J.



GRIMES, J.

8