Filed 5/12/16  In re Lilyanna N. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re LILYANNA N., A Person Coming Under the Juvenile Court Law. | B266780 |
| | (Los Angeles County Super. Ct. No. CK76049) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| EDGAR N., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra L. Losnick, Juvenile Court Referee.  Affirmed.

Jamie A Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

**INTRODUCTION**

Father Edgar N. appeals from the dependency court's order terminating his parental rights under Welfare and Institutions Code[1] section 366.26, and selecting adoption as the permanent plan for his five-year-old daughter, Lilyanna N. Father argues the court erred by failing to apply the beneficial-relationship exception set forth in section 366.26, subdivision (c)(1)(B)(1), to the statutory preference for adoption. Finding no error, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.     Initial Dependency Proceedings**

The Los Angeles County Department of Children and Family Services (department) first became aware of Lilyanna on May 31, 2012, when she was detained after a violent altercation between her mother Nicole R.[2] and father. The court found jurisdiction over Lilyanna under section 300, subdivisions (a) and (b), due to the extensive history of domestic violence between mother and father during the course of their relationship, as well as mother's reported mental health issues. The court placed Lilyanna in foster care and ordered family reunification services for both parents. In addition, the court ordered both parents to submit to random drug tests, counseling and parenting classes.

On March 28, 2014, Lilyanna was released into the care of both parents, to reside primarily with mother, who was then residing in a sober living facility. On June 16, 2014, the department filed a supplemental petition (§ 387) containing additional allegations against mother and seeking to remove Lilyanna from mother and place her in father's sole custody. The court released Lilyanna to father during the pendency of proceedings against mother on the supplemental petition.

---

[1]     All further undesignated section references are to the Welfare and Institutions Code.

[2]     Nicole's parental rights were also terminated by the dependency court. Because Nicole has not appealed that order, we do not address facts or issues which relate solely to her.

On August 15, 2014, the court terminated jurisdiction over Lilyanna and awarded father sole legal and physical custody, with monitored visitation to mother. However, the court stayed the order for 30 days, during which time the department filed a subsequent petition (§ 342) against father. The department alleged jurisdiction under section 300, subdivisions (a) and (b), predicated mainly on a domestic violence incident involving father and his new girlfriend, Jessica R. Specifically, the petition asserted Lilyanna witnessed father punch Jessica in the face while Jessica was holding the couple's seven-month-old child. The department further alleged father endangered Lilyanna by failing to place her in a car seat while transporting her in his car. In addition, the department alleged father had a history of drug abuse and was a current abuser of alcohol such that it impaired his ability to provide proper care to Lilyanna. The court detained Lilyanna and placed her in foster care. The court subsequently vacated its prior order terminating jurisdiction over Lilyanna.

Over the next several months, the department and the court continued to monitor both parents' efforts to comply with the case plan. The department evaluated whether it could return Lilyanna to mother's custody, but concluded Lilyanna would be at high risk of harm in mother's home. The department was unable to find an appropriate placement for Lilyanna with relatives or extended family members.

On November 12, 2014, the court held an adjudication hearing and sustained the allegations of the subsequent petition regarding father's domestic violence against his girlfriend, his endangerment of Lilyanna by driving without securing her in a car seat, and his past drug and current alcohol abuse. In its last minute information of that date, the department recommended suspending reunification services to father, due to father's ongoing violent behavior despite counseling, the length of reunification services provided already (more than 22 months at that point), and the age of the child.

On March 12, 2015, the court held a contested disposition hearing. The court left the foster care placement order in place and set the matter for a permanency planning hearing under section 366.26 on July 9, 2015. The court subsequently continued the permanency planning hearing and set it for a contested hearing at father's request.

3

**B.    Lilyanna's Foster Placement**

On September 22, 2014, the department placed Lilyanna in the foster home of Jennifer and Brian B.  The couple married in 2007 and had two biological sons. Jennifer and Brian wanted to expand their family, but had been advised by doctors not to attempt another pregnancy due to Jennifer's medical complications during her pregnancies.  The couple decided to become foster parents "in order to provide a loving and stable home for a child in need."

A department social worker was present when Lilyanna met Jennifer and one of her sons for the first time.  In its status review report of September 26, 2014, the department reported Lilyanna was immediately relaxed and comfortable after meeting Jennifer and her 18-month old son.  Later reports confirmed that Jennifer and Brian were nurturing Lilyanna, taking her to necessary medical appointments, meeting her emotional needs, and making her available for visits with mother and father.  Shortly after Lilyanna's placement with them, Jennifer and Brian told the department they loved Lilyanna and wanted to adopt her.  The department's subsequent reports confirmed Lilyanna's placement was successful, and she was happy and well-adjusted in her new home.  One social worker, who observed Lilyanna's visits with her biological mother, noted that during those visits, Lilyanna would seek out her foster mother, Jennifer, for comfort.  Following those visits, Lilyanna would run to Jennifer and Brian and express the desire to "go home."

By July 9, 2015, ten months after her placement with her foster family, the department reported Lilyanna had formed "a strong bond" with Jennifer and Brian and saw them as her parents.  Lilyanna had also formed a close relationship with the couple's two biological children.  The department reported that when Lilyanna and the boys were reunited after a separation, they were happy to see each other and would give each other hugs.  The couple continued to request adoption.

**C.    Father's Visitation with Lilyanna**

According to the department, father "had minimal contact with the child" between September 2014 and July 2015.  Following Lilyanna's foster placement, the

4

department arranged for father to have weekly monitored visitation with Lilyanna at the offices of the foster care agency. His visits were scheduled for two hours each Tuesday afternoon during the pendency of the § 342 petition. The department's reports do not indicate to what extent father visited Lilyanna during the months immediately following her placement, but they do note that when visits took place, the visits went well. As of July 9, 2015, the department reported father had not scheduled any further visits with Lilyanna and had limited his communication with the department.

At the court's request, on September 9, 2015, the department provided a supplemental report regarding father's visitation. The department reported father appeared inconsistently for his two-hour monitored weekly visits with Lilyanna during July and August; father either failed to show or canceled multiple visits during that time. When father did visit Lilyanna, he generally brought movies to watch with her. The monitors observed father appropriately interacted with Lilyanna and they reported no problems during father's visits.

### D.     Termination of Father's Parental Rights

The court held a hearing on September 9, 2015, to determine a permanent plan for Lilyanna. Through counsel, father contested the proposed permanent plan of adoption and the termination of his parental rights. Father asked the court to preserve his legal relationship with Lilyanna by establishing a legal guardianship, rather than authorizing adoption. Although father's counsel argued father's relationship should trump the planned adoption, father presented no testimony or other evidence regarding his relationship with Lilyanna or the likely impact on her should his parental rights be terminated. The court rejected father's argument, finding any incidental benefit Lilyanna may derive from visits with father was not sufficient to overcome the benefit Lilyanna would receive through adoption. The court found by clear and convincing evidence that Lilyanna was likely to be adopted and was adoptable, and terminated the parental rights of both father and mother. Father timely appeals.

5

Father's sole contention is that the dependency court erred by finding the beneficial parent-child relationship exception set forth in section 366.26, subdivision (c)(1)(B)(i), does not apply. We disagree.

We review the factual basis for the trial court's finding of adoptability and termination of parental rights for substantial evidence. (See *In re Jasmon O.* (1994) 8 Cal.4th 398, 422-423.) We "presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 (*Autumn H.*).) The parent has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order. (See *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

"The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time. [Citations.] Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect. [Citations.] The Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful. [Citations.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307.)

Although the early stages of dependency proceedings generally focus on the preservation of the family whenever possible, a child who cannot be returned to his or her parent must be provided a stable, permanent home. (§ 366.21, subd. (e); § 366.22, subd. (a); § 366.25, subd. (a); § 366.26, subd. (b).) Where reunification efforts are unsuccessful, "[a]doption, where possible, is the permanent plan preferred by the Legislature. (*In re Heather B.* (1992) 9 Cal.App.4th 535, 546, citing the Sen. Select Com. on Children and Youth Rep. on Child Abuse Reporting Laws, Juvenile Court

6

Dependency Statutes and Child Welfare Services (1987-1988 Reg. Sess.) p. 11.) 'Only if adoption is not possible, or if there are countervailing circumstances, or if it is not in the child's best interests are other, less permanent plans, such as guardianship or long-term foster care considered.' (*In re Brian R.* (1991) 2 Cal.App.4th 904, 924.)" (*Autumn H., supra,* 27 Cal.App.4th at pp. 573-574.) Although adoption requires terminating the natural parents' legal rights to the child, adoption is the preferred permanent plan for dependent children when reunification efforts have failed; if the child is likely to be adopted, the court must terminate parental rights unless an exception applies. (*In re Marina S.* (2005) 132 Cal.App.4th 158, 164.)

Pertinent here, termination of parental rights is prohibited where the court finds termination "would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) However, the scope of the beneficial parent-child relationship exception is limited. "To overcome the preference for adoption and avoid termination of the natural parent's rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent. [Citation.]" (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) In analyzing whether the parent-child relationship is important and beneficial, a court must examine: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction, and (4) the child's particular needs. (*Id.* at p. 467.)

7

The showing required to avoid termination of parental rights is considerable. It is not enough for the natural parent to show regular, pleasant visits with the child. (See *In re C.F.* (2011) 193 Cal.App.4th 549, 558 ["[C]ontact between parent and child will always 'confer some incidental benefit to the child,' but that is insufficient to meet the standard"].) The relationship must reflect a significant bond, the termination of which would be detrimental to the child: "[T]he parents must do more than demonstrate 'frequent and loving contact' [citation], an emotional bond with the child, or that the parents and child find their visits pleasant. [Citation.] [They] must show that they occupy 'a parental role' in the child's life." (*In re Andrea R.* (1999) 75 Cal.App.4th 1093, 1108.) This "significant attachment from child to parent results from the adult's attention to the child's needs for physical care, nourishment, comfort, affection and stimulation. [Citation.] The relationship arises from day-to-day interaction, companionship and shared experiences." (*Autumn H., supra,* 27 Cal.App.4th at p. 575.)

Here, father plainly failed to establish his relationship with Lilyanna is of such substance that it precludes termination of his parental rights. In fact, because father did not introduce any evidence in support of his request that the court retain his parental rights, there is almost no evidence in the record bearing on the issue. Father did not, for example, offer eyewitness testimony regarding his interactions with Lilyanna during their scheduled visits, or opinion testimony regarding the likely impact of termination of his parental rights on her. (See, e.g., *In re Casey D.* (1999) 70 Cal.App.4th 38, 51-53 [discussing conflicting evidence from social workers and program staff regarding interactions between child and natural mother].) Instead, father relies on brief, neutral observations contained in the department's reports to the effect that he interacted "appropriately" with Lilyanna and there were "no problems" reported during his monitored visits with her. That father never progressed beyond irregular, two-hour monitored weekly visits is—in and of itself—substantial evidence that a beneficial parent-child relationship does not exist in this case. As the court recognized, the facts here simply do not demonstrate father has the sort of significant, bonded relationship

with his daughter which would justify depriving her of the opportunity to be adopted by loving parents who want her to be a permanent member of their family.

## DISPOSITION

The order of the dependency court terminating Edgar N.'s parental rights is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

ALDRICH, Acting P. J.

HOGUE, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.